STATE OF NEBRASKA, APPELLEE,
v. WILLIAM D. TUCKER, APPELLANT.
609 N.W. 2d 306

Filed April 14, 2000.    No. S-99-571.

Dennis R. Keefe, Lancaster County Public Defender, and Joseph D. Nigro for appellant.

Don Stenberg, Attorney General, and Ronald D. Moravec for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

William D. Tucker appeals from an order of the district court for Lancaster County overruling his motion to dismiss criminal charges against him on grounds that the State violated his statutory and constitutional rights to a speedy trial. We conclude that Tucker's assignments of error are without merit and affirm the judgment of the district court.

## I. PROCEDURAL HISTORY

The parties stipulated to the facts relevant to Tucker's speedy trial claims. On February 6, 1998, an information was filed in the district court for Lancaster County, Nebraska, charging Tucker with one count of possession of a controlled substance with intent to deliver and two counts of possession of a controlled substance. Tucker appeared for arraignment and entered a plea of not guilty to all three counts on February 11, and was thereafter released on bond.

On February 25, 1998, Tucker, through his attorney, filed a motion for depositions. The district court granted the motion on March 17. On May 4, Tucker filed a motion to suppress, which was overruled by the district court on June 10.

On May 21, 1998, Tucker was arrested on narcotics charges in Jefferson County, Nebraska, and held without bond. The complaint, filed May 29, charged Tucker with possession of marijuana, possession of a controlled substance, possession of drug paraphernalia, and possession with intent to deliver. Tucker was arraigned in Jefferson County on June 1 and was subsequently released on bond on June 8. He was reincarcerated in

Jefferson County on June 15 and remained there while awaiting disposition of the charges. An additional information was filed in Jefferson County on October 8, charging Tucker with two counts of possession of a controlled substance and one count of being a habitual criminal. Pursuant to a plea agreement, on October 20, Tucker was convicted of two counts of possession of a controlled substance in the Jefferson County proceedings, in exchange for which all remaining counts against him in that county were dropped. On December 18, Tucker was sentenced by the district court for Jefferson County to incarceration in the custody of the Nebraska Department of Corrections for two consecutive 20- to 24-month terms, with credit for time served in the Jefferson County jail.

Due to Tucker's incarceration in Jefferson County, he failed to appear for a docket call in the district court for Lancaster County on August 6, 1998, and the district court entered an order requiring him to appear for a supplemental docket call on August 11. On that date, Tucker's counsel appeared, but Tucker did not, and the court therefore issued a bench warrant and made a docket entry indicating that the case would remain on the trial list for the jury term commencing August 17. On August 22, Tucker informed his attorney of his incarceration and pending charges in Jefferson County, and on August 24, Tucker's attorney provided this information to the deputy Lancaster County Attorney who was prosecuting the present case. Between September 29, 1998, and January 6, 1999, Tucker's attorney and the deputy Lancaster County Attorney discussed a plea agreement whereby the State offered to permit Tucker to plead guilty to two of the three felony charges pending in Lancaster County. No agreement was ever reached.

The Lancaster County Attorney's office applied for a writ of habeas corpus ad prosequendum on January 25, 1999, pursuant to which Tucker was transported to the district court for Lancaster County, where he appeared at a hearing conducted on January 28. During that hearing, the deputy Lancaster County Attorney represented to the court that Tucker had been sentenced to the Department of Correctional Services and was currently incarcerated at "D & E," which we understand to be the Diagnostic and Evaluation Center of the Department of

Correctional Services. See Neb. Rev. Stat. § 83-108.02 (Reissue 1999). On March 2, 1999, Tucker filed a motion to dismiss on speedy trial grounds, alleging that the State failed to bring him to trial within 6 months in violation of Neb. Rev. Stat. §§ 29-1207 and 29-1208 (Reissue 1995); article I, § 11, of the Nebraska Constitution; and the 6th and 14th Amendments to the U.S. Constitution. In an order filed April 6, 1999, the district court overruled the motion for discharge without specifying its reasoning. Tucker commenced this appeal, which we moved to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## II. ASSIGNMENTS OF ERROR

Tucker assigns as error the district court's order overruling his motion to dismiss on grounds that his statutory and constitutional rights to a speedy trial were violated.

## III. SCOPE OF REVIEW

■ Ordinarily, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. *State v. Al-Zubaidy*, 257 Neb. 935, 602 N.W.2d 8 (1999); *State v. Blackson*, 256 Neb. 104, 588 N.W.2d 827 (1999); *State v. Gibbs*, 253 Neb. 241, 570 N.W.2d 326 (1997); *State v. Turner*, 252 Neb. 620, 564 N.W.2d 231 (1997).

■ To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below. *State v. Kuehn*, 258 Neb. 558, 604 N.W.2d 420 (2000); *State v. Ortiz*, 257 Neb. 784, 600 N.W.2d 805 (1999).

## IV. ANALYSIS

### 1. STATUTORY RIGHT TO SPEEDY TRIAL

#### (a) Applicable Statutes

■ Before reaching the merits of Tucker's statutory speedy trial claim, we must resolve a threshold legal issue of whether the claim is governed by the "speedy trial" provisions of Neb. Rev. Stat. §§ 29-1201 to 29-1209 (Reissue 1995) or, as the State

contends on appeal, the provisions of Neb. Rev. Stat. §§ 29-3801 to 29-3809 (Reissue 1995), by which a Nebraska prison inmate may assert his or her right to a speedy trial on pending Nebraska charges. In *State v. Ebert*, 235 Neb. 330, 455 N.W.2d 165 (1990), and *State v. Soule*, 221 Neb. 619, 379 N.W.2d 762 (1986), we held that the latter statutory procedure, rather than the former, applies to instate prisoners.

Tucker's motion to dismiss on speedy trial grounds was filed approximately 2½ months after he was sentenced by the district court for Jefferson County to the Nebraska Department of Correctional Services for two consecutive 20- to 24-month periods of incarceration. Upon the rendition of this sentence, Tucker became a "committed offender" within the meaning of the Nebraska Treatment and Corrections Act, see Neb. Rev. Stat. § 83-170(3) (Reissue 1999), and the State became legally responsible for the cost of his incarceration pursuant to Neb. Rev. Stat. § 29-1002 (Reissue 1995), now found at Neb. Rev. Stat. § 47-119.01 (Cum. Supp. 1998), operative July 1, 1999. We conclude that Tucker was in the custody of the Department of Correctional Services at the time he filed his motion for discharge and that therefore his statutory speedy trial rights are governed by §§ 29-3801 to 29-3809.

### (b) Jurisdiction

We have not previously addressed the issue of whether the overruling of a motion to dismiss criminal charges on speedy trial grounds is a final, appealable order where the statutory right to a speedy trial is derived from §§ 29-3801 to 29-3809. However, we have held that an appeal could be taken from such an order where the asserted right is based upon the Nebraska "speedy trial" act, §§ 29-1207 and 29-1208, reasoning that a "ruling on a motion for absolute discharge based upon an accused criminal's nonfrivolous claim that his or her speedy trial rights were violated is a ruling affecting a substantial right made during a special proceeding and is therefore final and appealable." *State v. Gibbs*, 253 Neb. 241, 245, 570 N.W.2d 326, 330 (1997). See, also, *State v. Jacques*, 253 Neb. 247, 570 N.W.2d 331 (1997). In *State v. Williams*, 253 Neb. 619, 573 N.W.2d 106 (1997), we applied the same reasoning in holding that an order

denying a motion to dismiss based upon the alleged denial of an accused's speedy trial rights under the interstate Agreement on Detainers, Neb. Rev. Stat. § 29-759 (Reissue 1995), was a final, appealable order. For the same reasons, we conclude that the denial of a speedy trial claim governed by §§ 29-3801 to 29-3809 is a final, appealable order.

### (c) Merits of Statutory Speedy Trial Claim

Section 29-3802 requires that the Director of Correctional Services must promptly inform, in writing, each prisoner in the custody of the Department of Correctional Services of any untried indictment, information, or complaint against him or her in this state, of which the director has knowledge. In this case, the record is silent as to whether the Director of Correctional Services was aware of the charge pending against Tucker in Lancaster County, and if so, whether he informed Tucker of the charge. However, the record is clear that Tucker had actual knowledge of the pending charge. See *State v. Ebert*, 235 Neb. 330, 455 N.W.2d 165 (1990).

Section 29-3803 provides in part that "[a]ny person who is imprisoned in a facility operated by the Department of Correctional Services may request in writing to the director final disposition of any untried indictment, information, or complaint pending against him or her in this state." Upon receipt of such a request, the director must issue a certificate informing the prosecutor of the prisoner's status, notify the court in which the untried charges are pending of the prisoner's request for final disposition, and offer to deliver temporary custody of the prisoner to that jurisdiction. § 29-3803; *State v. Ebert, supra.*

Section 29-3804 provides that a prosecutor who has lodged a detainer against an instate prisoner may request that he or she be made available for trial, in which case the director is required to issue a certificate advising the prosecutor of the prisoner's status within the department and must also "[o]ffer to deliver temporary custody of the prisoner to the appropriate authority in the city or county where the untried indictment, information, or complaint is pending . . . ." § 29-3804(2). See, also, *State v. Ebert, supra.* Notably, this section does not require a prosecutor to file a detainer against any prisoner, and the filing of a detainer

is not required in order for a prisoner to assert his or her right to a speedy trial pursuant to § 29-3803. *State v. Ebert, supra.* Moreover, a writ of habeas corpus ad prosequendum is not synonymous with a "detainer." See *State v. Williams*, 253 Neb. 619, 573 N.W.2d 106 (1997).

■ It is a prosecutor's receipt of the statutorily required certificate from the Director of Correctional Services pursuant to § 29-3803 or § 29-3804 which triggers the 180-day period for disposition of untried charges prescribed by § 29-3805. *State v. Ebert, supra*; *State v. Soule*, 221 Neb. 619, 379 N.W.2d 762 (1986). In the present case, the record does not reflect that Tucker ever submitted a request to the Director of Correctional Services pursuant to § 29-3803 or that the prosecutor initiated the procedure set forth in § 29-3804, nor does it appear that the Director of Correctional Services ever issued the certificate required by those statutes. Accordingly, the 180-day period set forth in § 29-3805 was never triggered, and Tucker's statutory speedy trial claim is without merit.

## 2. CONSTITUTIONAL RIGHT TO SPEEDY TRIAL

■ The constitutional right to a speedy trial is guaranteed by U.S. Const. amend. VI and Neb. Const. art. I, § 11. The constitutional right to a speedy trial and the statutory implementation of that right exist independently of each other. *State v. Ward*, 257 Neb. 377, 597 N.W.2d 614 (1999); *State v. Kula*, 254 Neb. 962, 579 N.W.2d 541 (1998). Determining whether a defendant's constitutional right to a speedy trial has been violated requires a balancing test in which the courts must approach each case on an ad hoc basis. *State v. Ward, supra.* This balancing test involves four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *State v. Ward, supra*; *State v. Turner*, 252 Neb. 620, 564 N.W.2d 231 (1997). None of these four factors standing alone is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial; rather, the factors are related and must be considered together with such other circumstances as may be relevant. *State v. Ward, supra.* See, also, *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

█ Tucker's motion to dismiss was filed approximately 13 months after the filing of the information in Lancaster County. Approximately 59 days of this period was consumed by the disposition of the pretrial motions filed by Tucker. We have stated that an accused cannot generally take advantage of a delay in being brought to trial where the accused is responsible for the delay by either action or inaction. *State v. Turner, supra.*

For approximately 6 months of the period between the filing of the information in Lancaster County and the filing to dismiss the information on speedy trial grounds, Tucker was incarcerated in Jefferson County prior to his conviction on unrelated charges filed against him there. Tucker's argument that Lancaster County authorities were aware of the incarceration by August 22, 1998, and should have taken steps to secure his presence for trial ignores the fact that such action could have affected his availability for pretrial proceedings and trial on the Jefferson County charges, resulting in the delay of their disposition.

Moreover, the record reflects that in October 1998, while Tucker was incarcerated in Jefferson County, his attorney proposed that the State consider a further reduction or dismissal of the Lancaster County charges in light of the anticipated disposition of the pending Jefferson County charges. The deputy Lancaster County Attorney responded that he was unwilling to make a decision in this regard until Tucker had actually been sentenced in Jefferson County. That occurred on December 18, 1998, and on January 6, 1999, the deputy Lancaster County Attorney advised Tucker's counsel that he was unwilling to alter the proposed plea agreement or dismiss the charges.

Although the period of delay in this case is far shorter than that considered by the U.S. Supreme Court in *Barker v. Wingo, supra*, the circumstances resulting in the delay are analogous. In *Barker*, the Court held that the defendant's constitutional right to a speedy trial was not violated by the passage of more than 5 years between his arrest and trial on a murder charge. The prosecution had obtained numerous continuances, initially for the purpose of first trying an alleged accomplice so that, if convicted, his testimony would be available at Barker's trial. The Court deemed it significant that although represented by com-

petent counsel at all times, Barker did not object to these continuances and did not assert any speedy trial claim until after the accomplice was convicted. Reasoning that Barker had unsuccessfully gambled that the accomplice would be acquitted and the charges against him dismissed, the Court concluded:

> [B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional [speedy trial] right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial. We hold, therefore, that Barker was not deprived of his due process right to a speedy trial.

*Barker v. Wingo*, 407 U.S. 514, 536, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

It is apparent from this record that during his incarceration in Jefferson County, Tucker did not wish to be tried in Lancaster County, but, rather, was gambling that the sentence he would receive in Jefferson County would induce the prosecutor to further reduce or dismiss the Lancaster County charges. When that did not occur, Tucker was transported to Lancaster County pursuant to the writ of habeas corpus ad prosequendum, and only then did he file his motion to dismiss on speedy trial grounds. Based upon our consideration of the factors which compose the balancing test applicable to constitutional speedy trial claims, we conclude that Tucker's constitutional speedy trial claim is without merit.

## V. CONCLUSION

For the reasons set forth herein, we determine that Tucker's statutory speedy trial rights are governed by §§ 29-3801 to 29-3809 and that neither those rights nor his right to a speedy trial under the state and federal Constitutions had been violated at the time he filed his motion to dismiss on speedy trial grounds. Accordingly, we find no error and affirm the order of the district court overruling the motion.

AFFIRMED.