Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/08/2022 09:07 AM CST

State of Nebraska, appellee, v.
Luke LeFever, appellant.

___ N.W.2d ___

Filed February 1, 2022.    Nos. A-21-278, A-21-322.

1. **Judgments: Speedy Trial: Appeal and Error.** Ordinarily, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous.

2. **Judgments: Statutes: Appeal and Error.** To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.

3. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules and judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

4. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

5. **Constitutional Law: Due Process.** The determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law.

6. **Speedy Trial: Prisoners.** The statutory speedy trial rights of instate prisoners are governed by Neb. Rev. Stat. §§ 29-3801 to 29-3809 (Reissue 2016), and the procedure under Neb. Rev. Stat. § 29-1207 (Reissue 2016) does not apply to instate prisoners.

7. **Final Orders: Speedy Trial: Appeal and Error.** The denial of a speedy trial claim governed by Neb. Rev. Stat. §§ 29-3801 to 29-3809 (Reissue 2016) is a final, appealable order.

8. **Speedy Trial: Prisoners.** Under Neb. Rev. Stat. § 29-3803 (Reissue 2016), a prisoner may request final disposition be made of any charges pending against the prisoner.

9. **Extradition and Detainer: Prosecuting Attorneys: Prisoners.** Under Neb. Rev. Stat. § 29-3804 (Reissue 2016), a prosecutor may request that a prisoner against whom a detainer has been lodged be made available for trial.

10. **Speedy Trial: Notice: Prisoners: Prosecuting Attorneys.** Whether invoked by an instate prisoner or by the prosecutor, it is the prosecutor's receipt of the statutorily required certificate from the director of the Department of Correctional Services pursuant to Neb. Rev. Stat. § 29-3803 (Reissue 2016) or Neb. Rev. Stat. § 29-3804 (Reissue 2016) which triggers the 180-day period for disposition of untried charges prescribed by Neb. Rev. Stat. § 29-3805 (Reissue 2016).

11. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

12. \_\_\_\_. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal in case No. A-21-278 from the District Court for Dawson County: James E. Doyle IV, Judge. Appeal in case No. A-21-322 from the District Court for Lincoln County: Michael E. Piccolo, Judge. Judgments affirmed.

Derek L. Mitchell for appellant in case No. A-21-278, and Chawnta Durham, Lincoln County Public Defender, for appellant in case No. A-21-322.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Moore, Bishop, and Arterburn, Judges.

Bishop, Judge.

## I. INTRODUCTION

This opinion involves two appeals, case Nos. A-21-278 and A-21-322, which have been consolidated for argument and disposition. In case No. A-21-278, Luke LeFever was charged on December 3, 2019, with three felonies and two misdemeanors by criminal complaint in the county court for Dawson County. On December 20, the State filed in the county

court an "Agreement on Detainers Prosecutor's Acceptance of Temporary Custody Offered in Connection with Prisoner's Request for Disposition of a Detainer" (Form VII). Following further proceedings held after case No. A-21-278 was bound over to the Dawson County District Court, LeFever filed a motion for dismissal and absolute discharge on November 28, 2020. The district court denied this motion in an order entered on March 19, 2021.

In case No. A-21-322, LeFever was charged on December 3, 2019, with five felonies by criminal complaint in the county court for Lincoln County. On December 12, the State filed a Form VII in the county court. Following further proceedings held after case No. A-21-322 was bound over to the Lincoln County District Court, LeFever filed a motion for discharge on February 4, 2021. In an order entered on March 30, 2021, the district court adopted and incorporated portions of the Dawson County District Court's order in case No. A-21-278 and denied LeFever's motion.

LeFever appeals from the final orders in each case, and this court sustained the State's motion to consolidate the two appeals for argument and disposition. LeFever has different attorneys representing him in each appeal. Both cases involve the significance, if any, of the Form VII filed in the county courts. Neither district court found the filing of the Form VII to have any bearing on LeFever's right to a speedy trial. We agree and affirm the district court orders.

## II. BACKGROUND

These consolidated appeals arise from charges brought against LeFever in two separate prosecutions stemming from events alleged to have occurred on June 4, 2018, in Dawson County, Nebraska, and Lincoln County, Nebraska; LeFever was pursued by law enforcement from Dawson County into Lincoln County. According to the testimony of a Nebraska State Patrol sergeant at LeFever's preliminary hearing on January 24, 2020, in Lincoln County, a Dawson County sheriff's deputy

attempted to detain and arrest LeFever when there was an altercation between the deputy and LeFever. While the deputy was attempting to handcuff LeFever, LeFever was able to get away and ran to a nearby residence where he struggled with the homeowner. LeFever then stole a "John Deere Gator" and went to another residence, where he stole a pickup with a trailer attached to it. LeFever drove through a "pasture or field, through a fence, and onto Interstate 80." At times, LeFever "drove through the interstate fence" and "through cornfields at a high rate of speed." He also "drove at officers on at least one occasion," and at one time, he "was traveling in excess of 100 miles an hour once he got west of North Platte[, Nebraska]." LeFever also at one point drove through the "I-80 median" and into oncoming traffic. He was finally apprehended "between North Platte and Hershey, [Nebraska]."

At all times relevant to this appeal, LeFever remained in the custody of the Nebraska Department of Correctional Services. In a separate matter, LeFever was convicted of attempted first degree murder, a Class II felony. In a July 19, 2019, order entered by the Howard County District Court in case No. CR19-6, LeFever was sentenced to 48 to 50 years' imprisonment for that crime. We proceed to set forth the procedural histories for case Nos. A-21-278 and A-21-322.

## 1. Procedural Histories

### (a) Case No. A-21-278 (Dawson County)

On December 3, 2019, the State filed a complaint in the county court for Dawson County charging LeFever as follows: count I, possession of a firearm by a prohibited person, in violation of Neb. Rev. Stat. § 28-1206(1)(a)(i) (Supp. 2017); count II, theft by unlawful taking, in violation of Neb. Rev. Stat. § 28-511(1) (Reissue 2016); count III, operating a motor vehicle to avoid arrest, in violation of Neb. Rev. Stat. § 28-905(3)(a)(iii) (Reissue 2016); count IV, criminal mischief, in violation of Neb. Rev. Stat. § 28-519(1)(a) (Reissue 2016); and count V, unauthorized use of a motor vehicle, in violation of

Neb. Rev. Stat. § 28-516(1) (Reissue 2016). The State filed Form VII with the county court on December 20, 2019, and a motion to continue and a transportation motion were also filed the same day. Following an arraignment held on January 6, 2020, and a preliminary hearing held on January 22, LeFever was bound over to the Dawson County District Court.

The State filed an information on February 20, 2020, alleging the same five counts in the district court. On February 21, LeFever motioned for a continuance of his arraignment in the district court, and the court scheduled LeFever's arraignment for February 28. On April 13, LeFever filed a motion to continue the scheduled pretrial hearing and jury trial, and the court continued the pretrial hearing until June 19 and the jury trial until July 14. LeFever thereafter filed on May 8 motions to suppress and to produce evidence and on June 11 a motion to admit evidence pursuant to Neb. Rev. Stat. § 27-804 (Reissue 2016). Following a hearing held on July 16, the court entered an order on October 14 overruling LeFever's motions and rescheduling the pretrial hearing to November 30 and the jury trial to December 15.

On November 28, 2020, LeFever filed a motion for dismissal and absolute discharge. He alleged the filing of Form VII by the State on December 20, 2019, "averr[ed] that [LeFever] had requested the disposition of a Detainer and the Prosecutor had accepted the Offer of Custody from the Department of Corrections." He claimed that the 180-day period established by Neb. Rev. Stat. §§ 29-3801 to 29-3809 (Reissue 2016) to bring an instate prisoner to trial had been exceeded without a showing of good cause and asked the court to dismiss the charges against him and grant him an absolute discharge.

On January 20, 2021, a hearing was held by "synchronous audio and video connections" regarding this motion. LeFever called clerks of the district courts for Gosper County and Dawson County to testify, and the State offered as an exhibit the affidavit of the records administrator for the Department of Correctional Services. The parties submitted their arguments

via briefs to the district court, and the court took the matter under advisement.

### (b) Case No. A-21-322 (Lincoln County)

On December 3, 2019, the State filed a criminal complaint in the county court for Lincoln County charging LeFever as follows: counts I and II, attempted assault of an officer, in violation of Neb. Rev. Stat. §§ 28-929(1)(a)(i) and 28-201(2) (Reissue 2016); counts III and IV, use of a deadly weapon to commit a felony, in violation of Neb. Rev. Stat. § 28-1205(1)(a) (Reissue 2016); and count V, operating a motor vehicle to avoid arrest, in violation of § 28-905(3)(a)(iii). In addition to a transportation motion, the State filed Form VII with the county court on December 12, 2019. The State, on December 20, filed a transportation motion and a motion to continue LeFever's arraignment. LeFever was arraigned on January 6, 2020, and the State filed an amended complaint alleging the same offenses on January 7. Following a preliminary hearing held on January 24, LeFever's case was bound over to the Lincoln County District Court.

On April 22, 2020, the State filed an information in the district court charging the same five counts as alleged in the amended complaint. That same day, LeFever filed a plea in abatement claiming the evidence presented at the preliminary hearing was insufficient to establish the requisite probable cause. A hearing was held on April 27 regarding LeFever's plea in abatement, and the court overruled the plea in abatement in an order entered on June 12. LeFever thereafter filed a motion to quash the information on August 20 and a motion for reconsideration on his plea in abatement on August 24. On September 24, the district court entered an order denying LeFever's motion for reconsideration and sustaining in part his motion to quash. The State filed an amended information on October 1 charging LeFever as follows: counts I through IV, attempted assault of an officer, in violation of §§ 28-929(1)(a)(i) and 28-201(2); counts V through VIII,

use of a deadly weapon to commit a felony, in violation of § 28-1205(1)(a); and count IX, operating a motor vehicle to avoid arrest, in violation of § 28-905(3)(a)(iii). Following a hearing held on October 6, the district court entered an order on October 16 remanding the matter back to the county court for a preliminary hearing.

The county court held a second preliminary hearing on November 2, 2020, and in an order entered on December 31, the court dismissed counts I through IV in the amended information due to the State's failure to "identify the essential elements of the attempt statute" used by the State to charge LeFever. The county court further dismissed counts V through VIII due to the dismissal of the underlying felonies in counts I through IV. The case was bound over to the district court for further proceedings on count IX. On January 12, 2021, the State filed a second amended information in the district court charging the same counts as the first amended information with additional language describing the offenses alleged.

On February 4, 2021, LeFever filed a motion to discharge with the district court. LeFever alleged that "[a]t least 420 days have passed since the Attorney General acknowledged receipt of [his] request for disposition of a detainer" through the filing of Form VII, and he argued that the State failed to bring him to trial "within 180 days as required by" §§ 29-3801 to 29-3809. LeFever requested "an order of discharge or an evidentiary hearing to produce evidence that his constitutional and statutory rights to speedy trial have been violated."

An evidentiary hearing on LeFever's motion was held on February 8, 2021. LeFever appeared through counsel separate from his counsel in case No. A-21-278, and his counsel offered the sentencing order from case No. CR19-6 (Howard County), the copy of Form VII filed with the county court (exhibit 11), and a copy of the Department of Correctional Services' policy on the disposition of untried detainers. The State offered exhibit 13, the affidavit of the records manager for the Department of Correctional Services, which was

objected to by LeFever's counsel. We will provide more details regarding LeFever's objection in our analysis related to his assigned error concerning the district court's receipt of the exhibit. The State acknowledged that Form VII was "filed in error" and that "[t]he detainer that was filed with the court" and signed by the court "was never filed with the department of corrections"; therefore, no certificate was sent and the statute was not triggered. Following arguments, the parties submitted briefs to the district court, and the court took the matter under advisement.

Following this hearing, the State filed on March 2, 2020, a motion to supplement the record, and a hearing was subsequently held on March 8. The State's motion was denied by the district court in an order entered on March 9, and the State thereafter filed on March 15 a "Motion for Offer of Proof Hearing." That motion was denied as moot in the court's March 30 order denying LeFever's motion to discharge.

### 2. Denial of LeFever's Motions for Discharge

#### (a) Case No. A-21-278 (Dawson County)

Following the submission of the parties' briefs, the Dawson County District Court denied LeFever's motion for dismissal and absolute discharge in an order entered on March 19, 2021. The court found that neither LeFever nor the State had asserted rights under §§ 29-3801 to 29-3809 and that the 180-day period established by § 29-3805 had not been triggered by the State's filing of Form VII. The court further found that LeFever's rights to a speedy trial under the Nebraska Constitution and U.S. Constitution were not violated. We will set forth the district court's specific findings in our analysis below.

#### (b) Case No. A-21-322 (Lincoln County)

On March 30, 2021, the Lincoln County District Court entered an order denying LeFever's motion to discharge. The court stated that "[d]uring the review and independent research

of [LeFever's] Motion, the Court discovered that similar, if not identical[,] issues were raised and argued by [LeFever]" in the Dawson County District Court. The court found that the Dawson County District Court's order in case No. A-21-278 "addresses all of the issues raised and arguments made pursuant to the pending Motion." The court adopted the Dawson County District Court's decision and incorporated its analysis of LeFever's statutory rights to a speedy trial under §§ 29-3801 to 29-3809 into its own order.

### 3. Appeal and Consolidation

LeFever appeals both orders denying his respective motions for discharge. This court granted the State's motion to consolidate LeFever's appeals for argument and disposition.

## III. ASSIGNMENTS OF ERROR

In case No. A-21-278, LeFever claims the Dawson County District Court erred in finding that his right to a speedy trial had not been violated pursuant to §§ 29-3801 to 29-3809, Neb. Rev. Stat. § 29-1207 (Reissue 2016), the Nebraska Constitution, or the U.S. Constitution.

In case No. A-21-322, LeFever assigns six errors on appeal. He claims, consolidated and restated, that the Lincoln County District Court erred in (1) receiving and giving weight to an affidavit from the records manager of the Department of Correctional Services and not providing a further evidentiary hearing to allow LeFever to call as witnesses the assistant attorney general and county court judge who signed Form VII, (2) failing to grant LeFever's motion to discharge by not giving the proper legal effect to the State's filing of Form VII and finding that neither he nor the State triggered the 180-day deadline set forth in § 29-3805, (3) adopting the decision of the Dawson County District Court in case No. A-21-278 verbatim, and (4) failing to find that the State bore the risk of its mistaken filing of Form VII and deprived him of due process through its mistake.

## IV. STANDARD OF REVIEW

[1] Ordinarily, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. *State v. Tucker*, 259 Neb. 225, 609 N.W.2d 306 (2000).

[2] To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below. *Id.*

[3,4] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules and judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Figures, supra*.

[5] The determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. *State v. McCurry*, 296 Neb. 40, 891 N.W.2d 663 (2017).

## V. ANALYSIS

[6] As previously described, LeFever was sentenced by the Howard County District Court to 48 to 50 years' imprisonment. Pursuant to that sentence, LeFever has remained in the custody of the Nebraska Department of Correctional Services at all times relevant to this appeal. Accordingly, LeFever was a "[c]ommitted offender" as defined by Neb. Rev. Stat. § 83-170(2) (Cum. Supp. 2020), and his statutory rights to a speedy trial are governed by §§ 29-3801 to 29-3809. See *State v. Kolbjornsen*, 295 Neb. 231, 888 N.W.2d 153 (2016) (statutory speedy trial rights of instate prisoners governed by §§ 29-3801 to 29-3809; procedure under § 29-1207 does not apply to instate prisoners).

[7] In this consolidated appeal, the central matter underlying LeFever's assignments of error is the interaction of the State's filing of Form VII in each respective case with the mechanisms established by §§ 29-3803 and 29-3804 that trigger the 180-day period to bring an instate prisoner to trial provided by § 29-3805. LeFever's motions for discharge were each denied by the respective district court. The denial of a speedy trial claim governed by §§ 29-3801 to 29-3809 is a final, appealable order. *State v. Tucker, supra*. As a preliminary matter, we will set forth the backdrop of statutory and case law that governs our review in this appeal before we address the errors assigned.

### 1. Instate Detainer Statutes and Applicable Precedent

[8] Sections 29-3801 to 29-3809 provide for the manner in which an instate prisoner may assert his or her statutory right to a speedy trial. Section 29-3802 requires the director to

> promptly inform in writing each prisoner in the custody of the Department of Correctional Services of the source and nature of any untried indictment, information, or complaint against him or her of which the director has knowledge and of his or her right to make a request for final disposition thereof.

Pursuant to § 29-3803:

> Any person who is imprisoned in a facility operated by the Department of Correctional Services may request in writing to the director final disposition of any untried indictment, information, or complaint pending against him or her in this state. Upon receiving any request from a prisoner for final disposition of any untried indictment, information, or complaint, the director shall:
>
> (1) Furnish the prosecutor with a certificate stating the term of commitment under which the prisoner is being held, the time already served on the sentence, the time remaining to be served, the good time earned, the time

of the prisoner's parole eligibility, and any decision of the Board of Parole relating to the prisoner;

(2) Send by registered or certified mail, return receipt requested, one copy of the request and the certificate to the court in which the untried indictment, information, or complaint is pending and one copy to the prosecutor charged with the duty of prosecuting it; and

(3) Offer to deliver temporary custody of the prisoner to the appropriate authority in the city or county where the untried indictment, information, or complaint is pending.

The filing of a detainer is not required in order for an instate prisoner to assert his or her right to a speedy trial pursuant to § 29-3803. See *State v. Tucker*, 259 Neb. 225, 609 N.W.2d 306 (2000).

[9] Alternatively, the prosecutor may also request temporary custody of an instate prisoner to bring him or her to trial. Pursuant to § 29-3804:

The prosecutor in a city or county in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner, against whom he or she has lodged a detainer and who is serving a term of imprisonment in any facility operated by the Department of Correctional Services, made available upon presentation of a written request for temporary custody or availability to the director. The court having jurisdiction of such indictment, information, or complaint shall duly approve, record, and transmit the prosecutor's request. Upon receipt of the prosecutor's written request the director shall:

(1) Furnish the prosecutor with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the good time earned, the time of the prisoner's parole eligibility, and any decision of the Board of Parole relating to the prisoner; and

(2) Offer to deliver temporary custody of the prisoner to the appropriate authority in the city or county where the untried indictment, information, or complaint is pending in order that speedy and efficient prosecution may be had.

Section 29-3804 does not require a prosecutor to file a detainer against any prisoner; rather, the prosecutor is only required to file a detainer if the prosecutor elects to seek temporary custody or availability of a prisoner. See *State v. Ebert*, 235 Neb. 330, 455 N.W.2d 165 (1990). The Nebraska Supreme Court has held that, generally speaking, a detainer is a notification filed with the institution in which an individual is serving a sentence, advising the prisoner that he is wanted to face criminal charges pending in another jurisdiction. *Id.* See, also, *State v. Reynolds*, 218 Neb. 753, 359 N.W.2d 93 (1984) (defining detainers in context of interstate Agreement on Detainers). It has also been held that a writ of habeas corpus ad prosequendum "is not synonymous with a 'detainer.'" *State v. Tucker*, 259 Neb. at 231, 609 N.W.2d at 311.

[10] Whether invoked by an instate prisoner or by the prosecutor, it is the prosecutor's receipt of the statutorily required certificate from the director of the Department of Correctional Services pursuant to § 29-3803 or § 29-3804 which triggers the 180-day period for disposition of untried charges prescribed by § 29-3805. See *State v. Tucker, supra*. Section 29-3805 provides in full:

Within one hundred eighty days after the prosecutor receives a certificate from the director pursuant to section 29-3803 or 29-3804 or within such additional time as the court for good cause shown in open court may grant, the untried indictment, information, or complaint shall be brought to trial with the prisoner or his or her counsel being present. The parties may stipulate for a continuance or a continuance may be granted on a notice to the attorney of record and an opportunity for him or her to be heard. If the indictment, information, or complaint is not brought to trial within the time period

stated in this section, including applicable continuances, no court of this state shall any longer have jurisdiction thereof nor shall the untried indictment, information, or complaint be of any further force or effect and it shall be dismissed with prejudice.

The certificate contemplated by § 29-3805 is not restricted to one particular form. See *State v. Soule*, 221 Neb. 619, 379 N.W.2d 762 (1986) (letter from Department of Correctional Services' deputy administrator which was received by county attorney operated as certificate under §§ 29-3803 to 29-3805). The laws and decisions governing the right to a speedy trial under § 29-1207 do not apply to an instate prisoner's speedy trial rights under § 29-3805. See *State v. Soule, supra*.

## 2. Form VII

As this appeal primarily concerns the separate copies of Form VII filed by the State in case Nos. A-21-278 and A-21-322, we will set forth the contents of Form VII as relevant to LeFever's assigned errors.

The caption of Form VII refers to the form as "Agreement on Detainers Prosecutor's Acceptance of Temporary Custody Offered in Connection With Prisoner's Request for Disposition of a Detainer." Beneath the caption, in an outlined box, Form VII provides:

> IMPORTANT: This form should be used when an offer of temporary custody has been received as a result of a *prisoner's* request for disposition of a detainer. If the offer has been received because another prosecutor in your state has initiated the request, use Form VIII. Copies of Form VII should be sent to the warden/superintendent, the prisoner, the other jurisdictions in your state listed in the offer of temporary custody, and the Agreement Administrator of both the sending and receiving states. Copies should be retained by the person filing the acceptance and the judge who signs it.

(Emphasis in original.) Form VII further states in pertinent part:

The undersigned prosecutor requests temporary custody of [LeFever] who is presently under indictment, information or complaint [for] which I am a Special Prosecutor, please be advised that I accept temporary custody and that I propose to bring this person to trial on the indictment, information or complaint named in the offer [of temporary custody] within the time specified in Article III(a) of the Agreement on Detainers.

We observe that the copies of Form VII filed in the county courts of Dawson County and Lincoln County were addressed to the director of the Nebraska Department of Correctional Services; both were signed by the same assistant attorney general/special prosecutor. In a section labeled "COMMENTS," both copies of Form VII further provided the manner in which LeFever would be placed in the custody of the respective county sheriff for each trial. Above the judge's signature line on the form's second page, Form VII states:

I hereby certify that the person whose signature appears above is an appropriate officer within the meaning of Article IV(a) and that the facts recited in this request for temporary custody are correct and that having duly recorded said request, I hereby transmit it for action in accordance with its terms and the provision of the Agreement on Detainers.

The filed copies of Form VII were each signed by the respective county court judge.

### 3. CASE NO. A-21-278 (DAWSON COUNTY)

[11] LeFever's sole assignment of error in case No. A-21-278 alleges that the district court erred in finding that his right to a speedy trial had not been violated pursuant to §§ 29-3801 to 29-3809, § 29-1207, the Nebraska Constitution, or the U.S. Constitution. However, LeFever's argument in his brief on appeal is limited solely to the issue of whether his statutory speedy trial rights under §§ 29-3801 to 29-3809 were violated. We have already determined that § 29-1207 is not applicable in this case. LeFever has also failed to specifically

argue that his rights under the Nebraska Constitution or the U.S. Constitution were violated. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Britt*, 310 Neb. 69, 963 N.W.2d 533 (2021). Accordingly, we limit our review to the issue of LeFever's speedy trial rights under §§ 29-3801 to 29-3809.

### (a) District Court's Order

In its order denying LeFever's motion for discharge, the district court found that neither LeFever nor the State triggered the 180-day period to bring LeFever to trial pursuant to § 29-3805. In so finding, the court relied on the "affidavit of the records administrator for the Nebraska Department of Correctional Services" offered by the State at the hearing held on January 20, 2021. According to the affidavit,

> the records administrator . . . is responsible for maintaining all records related to inmates in custody with the Nebraska Department of Correctional Services. [The records administrator] is responsible for keeping a record of all requests by prisoners for the disposition of untried charges as allowed under Neb. Rev. Stat. § 29-3803, and of all detainers lodged against a prisoner with the Department of Correctional Services, as allowed by Neb. Rev. Stat. § 29-3804. Additionally, [the records administrator] is responsible for maintaining a record of any certificates that have been sent to a prosecuting authority pursuant to Neb. Rev. Stat. §§ 29-3803 and 29-3804. Such detainers, requests, or certificates are kept in an inmate's file.

The affidavit further indicated that the records administrator reviewed LeFever's "inmate file" and that his file did not contain "any records of a request by [LeFever] for the disposition of untried charges," "any records of there being a detainer lodged against . . . LeFever," or "records of any certificates sent to a prosecuting authority pursuant to . . . §§ 29-3803 and 29-3804."

The district court addressed LeFever's claim that Form VII, as filed by the State in the county court, "contradicts the records administrator and is evidence showing the filing of a detainer or a request for disposition of untried charges." The court examined the "substance" of Form VII and determined that "[t]he references to a detainer and to a 'prisoner's request for disposition' are not evidence of facts, but are instead statements describing the circumstances within which the form was intended to be used." The court found that these statements were not "as probative of the pertinent facts" as the records administrator's affidavit and that the filing of Form VII could not "reasonably be considered the fulfillment of actions required of either LeFever or the prosecutor to initiate" the process through either § 29-3803 or § 29-3804. The court concluded that Form VII could also not be a judicial admission that either LeFever or the State had initiated the procedures set forth in §§ 29-3803 and 29-3804 because it was "not a pleading" and its use in this case bore "the hallmark of mistake and inadvertence."

Finding that neither LeFever nor the State triggered the 180-day period established by § 29-3805, the district court proceeded to examine whether LeFever's rights to a speedy trial under the Nebraska Constitution and the U.S. Constitution were violated. After evaluating the relevant factors, the court found that LeFever's constitutional rights to a speedy trial had not been violated.

### (b) LeFever's Statutory Speedy Trial Claim

LeFever argues on appeal that the State's filing of Form VII in the county court served to fulfill the requirements under either § 29-3803 or § 29-3804 to trigger the 180-day period to bring him to trial on the charges alleged. Ordinarily, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. *State v. Tucker*, 259 Neb. 225, 609 N.W.2d 306 (2000).

Critical to this appeal is the question of what effect, if any, the contents of Form VII should be given. As previously described, Form VII references that it should be used by the prosecution "when an offer of temporary custody [from the Department of Correctional Services] has been received as the result of a *prisoner's* request for disposition of a detainer." (Emphasis in original.) However, this language appears to be part of standardized language indicating when and how Form VII is to be used rather than testamentary statements of fact. As the district court noted, Form VII includes these statements without regard for the individual circumstances of both this case and any case in which Form VII would be used. Our review indicates that the only statements independently added to Form VII in this case are the statements in the "COMMENTS" section describing the manner in which LeFever would be taken into custody by the Dawson County sheriff for trial. Upon consideration of Form VII as a whole, we find that it is not probative of whether LeFever requested disposition of untried charges or whether the prosecutor received "an offer of temporary custody" from the Department of Correctional Services in this case.

We conclude, as the district court did, that the most probative evidence on the issues in this case is the records administrator's affidavit. We note that LeFever did not object to this affidavit, and the affidavit reported that LeFever's inmate file did not contain a "request . . . for the disposition of untried charges" as set forth in § 29-3803. LeFever does not direct this court to any evidence which contradicts this affidavit, other than the contents of Form VII that we have found not to be probative of this matter. Additionally, LeFever did not offer any evidence that he did in fact make a request for the disposition of a detainer.

LeFever also claims that the filing of Form VII in this case should be treated as though the State filed a detainer and made a request to take temporary custody of LeFever to bring him to trial. However, we note that even though the filed copy of Form VII was addressed to the director of the Department

of Correctional Services, all that can be gleaned from the record is that Form VII was filed in the county court for Dawson County. Although LeFever argues that we should presume that the director received Form VII in this case because it was addressed to the director, there is no evidence in the record that Form VII was actually delivered to the director. Further, the records administrator for the Department of Correctional Services stated in her affidavit that LeFever's inmate file did not contain "any records of there being a detainer lodged against [him]." As we noted previously, LeFever does not identify evidence contradicting the records administrator's affidavit other than the filing of Form VII by the State and the standardized language contained therein.

Moreover, we emphasize that the law is clear that "[i]t is a prosecutor's receipt of the statutorily required certificate from the Director of Correctional Services pursuant to § 29-3803 or § 29-3804 which triggers the 180-day period for disposition of untried charges prescribed by § 29-3805." *State v. Tucker*, 259 Neb. 225, 231, 609 N.W.2d 306, 311 (2000). Even if we considered Form VII to be a detainer and request for temporary custody in this case, this would not serve to trigger the 180-day period under § 29-3805, since it appears only to have been filed in the county court and not delivered to the director of the Department of Correctional Services. The records administrator reported that LeFever's inmate file did not "contain any records of there being a detainer lodged against" LeFever, nor did it "contain records of any certificates sent to a prosecuting authority pursuant to . . . §§ 29-3803 and 29-3804." Having previously found Form VII not to be probative on this matter, we note there is no other evidence in the record contradicting the records administrator's affidavit.

LeFever also suggests that because he was transported to the county court concurrent with and after the filing of Form VII in this case, we should assume that either § 29-3803 or § 29-3804 have been properly invoked. However, the Nebraska Supreme Court has previously rejected this argument. See

*Bradley v. Hopkins*, 246 Neb. 646, 657, 522 N.W.2d 394, 401 (1994) (court rejected inmate's claim that 180-day clock was started by prosecutor's act in causing inmate to first appear in county court, notwithstanding lack of certificate from director to prosecutor; when "neither the expediting provisions of § 29-3803 nor of § 29-3804 were ever invoked, the deadline contained in § 29-3805 never came into play"). We similarly conclude that LeFever's appearance before the county court does not demonstrate that § 29-3803 or § 29-3804 have been invoked in this case.

[12] In light of our review of the record and the applicable case law, we find that the district court was not clearly erroneous in determining that neither LeFever nor the State triggered the 180-day period pursuant to § 29-3805 in this case. Accordingly, we need not address LeFever's argument that the 180-day period was extended without good cause. See *State v. Huston*, 298 Neb. 323, 903 N.W.2d 907 (2017) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

### 4. Case No. A-21-322 (Lincoln County)

#### (a) District Court's Order

In its order, the district court also concluded that "[n]either . . . LeFever nor the prosecutor took the actions required" for LeFever to assert his right to a speedy trial under §§ 29-3801 to 29-3809. In doing so, the court found that the decision by the Dawson County District Court in case No. A-21-278 "addresses all of the issues raised and arguments made pursuant to" LeFever's motion for discharge. The court "adopt[ed] the decision of the Dawson County District Court and incorporate[d]" the analysis regarding LeFever's statutory rights to a speedy trial into its own order.

#### (b) Affidavit of Records Manager

LeFever claims that the district court should have sustained his objection and excluded the affidavit of the records

manager for the Department of Correctional Services at the hearing on February 8, 2021, or, alternatively, the court should have granted a further evidentiary hearing.

### (i) Records Manager's Affidavit

We note that the records manager's affidavit in this case mirrors the records administrator's affidavit received in case No. A-21-278. In this case, as in case No. A-21-278, the affidavit states that LeFever's "inmate file" did not contain "any records of a request by [LeFever] for the disposition of untried charges," "any records of there being a detainer lodged against . . . LeFever," or "records of any certificates sent to a prosecuting authority pursuant to . . . §§ 29-3803 and 29-3804."

LeFever asserts that the State has taken contradictory positions between its filing of Form VII and the statements in the records manager's affidavit. Specifically, he claims that the State represented through Form VII that it had received LeFever's request for disposition of untried charges along with the statutorily required certificate from the Department of Correctional Services. He also notes that the State agreed at the hearings held on February 8 and March 8, 2021, that Form VII served as or was intended to be a detainer in this case. LeFever argues that the State should be estopped from using the statements in the affidavit that LeFever's inmate file did not contain his request for disposition, a detainer lodged by the State, or the statutory certificate from the Department of Correctional Services.

We find that the State has not taken inconsistent positions in this case such that the records manager's affidavit should have been excluded. First, for the reasons we have previously set forth, the generic statements in Form VII that it is to be used when the prosecution has received an offer of temporary custody in connection with an inmate's request for disposition of untried charges do not constitute evidence that the State received an offer of temporary custody or that LeFever actually made a written request for disposition. These statements

in Form VII were not assertions of facts made by the State, and there was no inconsistency between the records manager's affidavit and the State's filing of Form VII regarding these issues.

We likewise find no inconsistency between the records manager's affidavit and the State's agreement that Form VII was intended to be a detainer. As in case No. A-21-278, the record in this case indicates that Form VII was filed only in the county court for Lincoln County on December 12, 2019. Although Form VII was addressed to the director of the Department of Correctional Services, there is no affirmative evidence that the director actually received Form VII in this case. Further, the records manager's affidavit states that LeFever's inmate file with the Department of Correctional Services did not contain "any records of there being a detainer lodged against" him, consistent with the evidence indicating that Form VII was filed only in the county court. On our review, we observe no contradictions in the record stemming from the records manager's affidavit, and the district court therefore did not err in receiving it.

### (ii) Further Evidentiary Hearing

Alternatively, LeFever suggests that he should have been given an opportunity for another evidentiary hearing to allow for the cross-examination of witnesses. During the February 8, 2021, hearing on his motion for discharge, LeFever's counsel argued that

> if the Court receives Affidavit 13, which is purporting to be an affidavit of a records manager, I believe that puts the defense in the position of having to have an evidentiary hearing in calling the witness who attested to the fact in Exhibit 11 which would mean we'd need to call [the assistant attorney general] and [the county court judge] as regarding the facts that are attested to in that document by those individuals. And I don't know that the Court really wants us to have to go through that, but we have no other choice if the Court receives Exhibit 13.

LeFever argued that "if the Court wants to take a look at that exhibit from the records clerk, then I think we have to take a look at what the other two individuals are saying." On appeal, LeFever reiterates that because exhibits 11 and 13 are in conflict, there is a due process issue, since LeFever was not provided an opportunity to cross-examine the "declarants of these conflicting statements." Brief for appellant in case No. A-21-322 at 23.

However, as already addressed, we find no inconsistency between the records manager's affidavit and the State's execution and filing of Form VII. Further, the determinative factor here is not why or how Form VII came to be executed and filed in the county court; rather, pursuant to the pertinent statutes, the relevant inquiry is whether the director of the Department of Correctional Services issued a certificate in response to a request received from either LeFever or the prosecutor. As previously discussed, the only probative evidence in this regard was the affidavit of the records manager averring that no such request or resulting certificate was contained in LeFever's inmate file, where it would have been if such a request had been made. LeFever does not claim, nor did he produce any evidence, that he did in fact make a request for the disposition of untried charges. There is no evidence that Form VII was ever delivered to the Department of Correctional Services, regardless of any belief by the assistant attorney general or the county court judge that it would be. Any further hearing in that regard would be irrelevant to the disposition of the issue presented; accordingly, there was no error by the district court in failing to conduct a further evidentiary hearing on this matter.

### (c) Denial of Motion to Discharge

LeFever claims in this appeal that, as in case No. A-21-278, the district court erred in denying his motion for discharge. His argument in this case similarly relies on the filing of Form VII with the county court as proof that the 180-day period

prescribed by § 29-3805 was triggered pursuant to either § 29-3803 or § 29-3804.

However, our analysis addressing LeFever's argument in case No. A-21-278 applies with equal force to his claims in this case. As set forth previously, we are not persuaded that the contents of Form VII constitute evidence that LeFever made a written request for disposition of any untried charges or that the prosecution received the statutorily required certificate pursuant to either § 29-3803 or § 29-3804 that would trigger the 180-day period. Notably, LeFever produced no evidence to indicate that he in fact made such a request. Moreover, even if Form VII could be characterized as a detainer and request by the prosecution for temporary custody of LeFever, the filing of Form VII with the county court would not trigger the 180-day period. See *State v. Tucker*, 259 Neb. 225, 609 N.W.2d 306 (2000) (it is prosecutor's receipt of statutorily required certificate from director of Department of Correctional Services pursuant to § 29-3803 or § 29-3804 which triggers 180-day period for disposition of untried charges prescribed by § 29-3805). Accordingly, to the extent that LeFever claims the district court failed to give Form VII the proper legal effect, we find no error by the court.

Consequently, we are left with the affidavit of the records manager for the Department of Correctional Services as the most probative evidence in the record of whether the 180-day period was triggered in this case. As we have noted, the records manager's affidavit reported that LeFever's inmate file with the Department of Correctional Services did not contain records of any requests by LeFever for disposition, any detainers lodged against him, or any certificates issued by the Department of Correctional Services to the State pursuant to either § 29-3803 or § 29-3804. Other than Form VII, which we have concluded is not probative on this matter, LeFever does not identify evidence in the record contradicting this affidavit. In light of the record in this case, we find that the district court was not clearly erroneous in finding that neither LeFever nor the

State triggered the 180-day period prescribed by § 29-3805. Accordingly, the court did not err in denying LeFever's motion for discharge.

### (d) Adoption and Incorporation of Dawson County Order

As to LeFever's claim that it was error for the Lincoln County District Court to adopt and incorporate the Dawson County District Court's order, we find no error. We have found no case law in Nebraska that would preclude a court from incorporating relevant portions of another court's decision into its own order. Notably, the district court specifically stated that it conducted "its independent review of the issues presented" and that the "above findings" were "so found and ordered accordingly." And as previously discussed, we found that the district court's denial of LeFever's motion for discharge was supported by the evidence in this case. LeFever's claim that the district court erred in incorporating the Dawson County District Court's analysis into its order fails.

### (e) Risk of State's Mistaken Filing

LeFever also argues that the mistaken filing of Form VII should not work to his detriment and that the State should bear the burden of its mistake instead. In his brief on appeal, LeFever analogizes the present case to this court's holding in *State v. Alba*, 13 Neb. App. 519, 697 N.W.2d 295 (2005), in which we found that the State bore the risk of its mistaken classification of felonies charged against a defendant pursuant to a plea agreement. However, we find the reasoning underlying *State v. Alba, supra*, to be inapposite to LeFever's appeal, as our decision in that case rested upon principles of contract law as applicable to plea agreements.

In his reply brief, LeFever also highlights cases from other jurisdictions concerning the effects of government noncompliance with the requirements of the interstate Agreement on Detainers, see Neb. Rev. Stat. § 29-759 (Reissue 2016), when either a prisoner or a prosecuting authority has initiated the

process to bring the prisoner to trial within the time period prescribed by the Agreement on Detainers. LeFever draws particular attention to *People v. Lincoln*, 42 Colo. App. 512, 516, 601 P.2d 641, 644 (1979) (charges against defendant dismissed when prison official having custody of defendant in sending state failed to inform defendant of detainer "lodged against him" in receiving state pursuant to "Article III(c)" of Agreement on Detainers; prosecuting authority of receiving state must bear burden of ensuring provisions of Agreement on Detainers are enforced in sending state), and *People v. Esposito*, 37 Misc. 2d 386, 201 N.Y.S.2d 83 (1960) (charges against defendant dismissed when prosecutor failed to bring defendant to trial within 180 days of prosecutor's receipt of defendant's request for disposition of untried charges; failure by warden with custody of defendant to send offer of temporary custody to prosecutor in accordance with Agreement on Detainers did not render defendant's assertion of his rights insufficient to invoke 180-day period under Agreement on Detainers).

Upon our review, we note substantial distinctions between these cases and the circumstances of LeFever's case. The cases cited by LeFever involve affirmative duties imposed upon state officials and prosecutors by the Agreement on Detainers, and *People v. Esposito, supra*, specifically concerned the duties imposed upon a prosecutor in response to a defendant's assertion of his or her rights under the Agreement on Detainers. In contrast, our record in this case shows that neither LeFever nor the State carried out the requisite acts to trigger the 180-day period prescribed by § 29-3805. As set forth previously, Form VII does not constitute evidence that LeFever actually requested that he be brought to trial, and we have concluded that the filing of Form VII in the county court did not satisfy the requirements set forth in § 29-3804 for the State to trigger the 180-day period. In this case, unlike those cited by LeFever concerning the Agreement on Detainers, the record shows there was no affirmative obligation on the State to proceed as though § 29-3803 or § 29-3804 had been invoked.

We agree with the State's acknowledgment at oral argument that this case is "screwed up" due to the mistaken filing of Form VII. And while we can appreciate LeFever's argument that the State should "bear the risk" of its mistakes, reply brief for appellant in case No. A-21-322 at 12, and that the prosecutor "is in the better position to not only know the correct law, but . . . to also know what communication has been received from" the Department of Correctional Services, brief for appellant in case No. A-21-322 at 19, we cannot agree that the mistake at issue here warrants dismissal of the charges against LeFever pursuant to § 29-3805.

## VI. CONCLUSION

For the reasons set forth above, we determine that LeFever's rights to a speedy trial under §§ 29-3801 to 29-3809 were not violated. We therefore affirm the denials of LeFever's motions for discharge in case Nos. A-21-278 and A-21-322.

Affirmed.