Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/06/2023 09:04 AM CST

State of Nebraska, appellee, v.
Jorge Yzeta, appellant.
___ N.W.2d ___

Filed January 6, 2023.    No. S-22-346.

1. **Judgments: Statutes: Appeal and Error.** To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.

2. **Speedy Trial: Prisoners.** Neb. Rev. Stat. §§ 29-3801 to 29-3809 (Reissue 2016) provide a procedure by which a Nebraska prison inmate may assert his or her right to a speedy trial on pending Nebraska charges.

3. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

4. **Final Orders: Speedy Trial: Appeal and Error.** The denial of a speedy trial claim governed by Neb. Rev. Stat. §§ 29-3801 to 29-3809 (Reissue 2016) is a final, appealable order.

5. **Statutes.** Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning. A court will not read meaning into a statute that is not warranted by the legislative language or read anything plain, direct, or unambiguous out of a statute.

6. **Statutes: Intent.** When interpreting a statute, a court must give effect, if possible, to all the several parts of a statute and no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided.

7. **Statutes.** Statutes relating to the same subject matter will be construed so as to maintain a sensible and consistent scheme, giving effect to every provision.

8. **Speedy Trial: Prisoners.** Neb. Rev. Stat. §§ 29-3801 to 29-3809 (Reissue 2016) apply only to a prisoner in the custody of the Department of Correctional Services.

9. **Statutes: Legislature: Intent: Appeal and Error.** In construing a statute, an appellate court's objective is to determine and give effect to the legislative intent of the enactment.

10. **Statutes: Legislature: Intent.** Components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of an act are consistent, harmonious, and sensible.

11. **Constitutional Law: Speedy Trial: Statutes.** The constitutional right to a speedy trial and the statutory implementation of that right exist independently of each other.

12. **Speedy Trial: Prisoners.** Neb. Rev. Stat. §§ 29-3801 to 29-3809 (Reissue 2016), including the speedy trial provision of § 29-3805, cease to apply to a criminal defendant when he or she is discharged from the custody of the Department of Correctional Services.

13. **Trial: Appeal and Error.** An issue not presented to or decided on by the trial court is not an appropriate issue for consideration on appeal.

14. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Hall County: PATRICK M. LEE, Judge. Affirmed.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

CASSEL, J.

## INTRODUCTION

Jorge Yzeta—relying on the intrastate detainer statutes[1]—appeals from a criminal case order denying relief under the speedy trial section.[2] This appeal raises a novel legal question:

---

[1] See Neb. Rev. Stat. §§ 29-3801 to 29-3809 (Reissue 2016) (intrastate detainer statutes).

[2] See § 29-3805.

Does the 180-day period for trial[3] cease to run after a "person who is imprisoned in a facility operated by the Department of Correctional Services"[4] (DCS) is finally discharged—that is, when he or she is no longer a DCS "prisoner"?[5] Because we conclude that it does, we affirm.

## BACKGROUND

### Hall County Proceedings Begin

In December 2020, the State filed a complaint in the county court for Hall County, Nebraska. It charged Yzeta with two felonies, a misdemeanor, and an infraction.

### Yzeta Becomes Inmate and Requests Disposition

After the county court proceeding commenced, Yzeta began serving a sentence imposed in Douglas County, Nebraska, for an unrelated felony offense. Under that sentence, he was committed to a facility operated by DCS.

On September 27, 2021, while Yzeta was still a prisoner in a DCS facility, he exercised his statutory right to request a speedy disposition of the untried Hall County charges. As part of Yzeta's request, DCS' director certified that Yzeta was presently incarcerated and that his sentence would expire no later than December 29.[6]

### Hall County Proceedings Before DCS Discharge

In a response dated October 13, 2021, the county attorney acknowledged receipt of Yzeta's request and accepted temporary custody of him for an arraignment. The county attorney filed the corresponding documents in the county court on

---

[3] See *id.*

[4] § 29-3803.

[5] § 29-3804 ("prisoner . . . who is serving a term of imprisonment in any facility operated by [DCS]").

[6] See § 29-3803(1).

October 14 and 15. Because Yzeta was still in custody on November 3, he appeared remotely at a hearing on that date. The county court set a preliminary hearing for December 22.

On December 22, 2021, the two felony charges were bound over to the district court for trial. The county court dismissed the other two charges.

A week later, Yzeta finished serving his unrelated sentence. As anticipated, DCS discharged him from custody on December 29, 2021.

### HALL COUNTY PROCEEDINGS
### AFTER DCS DISCHARGE

On January 5, 2022, the State filed an information in the district court for Hall County. It charged Yzeta with the same four counts as alleged in the original complaint.

On January 18, 2022, the district court arraigned Yzeta on the charges in the information. Upon receiving his plea of not guilty to all the charges, the court set a pretrial conference for April 4 and a jury trial for May 2.

### YZETA'S MOTION TO DISMISS

On April 22, 2022, Yzeta filed a motion in the district court to dismiss his case for lack of jurisdiction pursuant to the intrastate detainer statutes. He asserted that (1) he requested a speedy disposition of the untried charges on September 16, 2021; (2) the county attorney received notice of and accepted his request no later than October 15; and (3) more than 180 days had passed since October 15. Thus, he requested the court to dismiss the case due to the State's failure to bring him to trial within the statutory 180-day time limit.

The district court heard the motion on May 2, 2022—the same date on which the trial had been scheduled. The court heard arguments from both parties and took the matter under advisement.

### DISTRICT COURT'S ORDER

On May 5, 2022, the court overruled the motion. Its written order stated two grounds.

First, it concluded that Yzeta was not entitled to relief under §§ 29-3801 to 29-3809 because he was not a "'committed offender'"[7] on the date that he requested the dismissal—April 22, 2022. The court noted that when Yzeta first requested a speedy disposition of the untried charges, he was committed to DCS, but that DCS had discharged him on December 29, 2021.

The court explained that under the intrastate detainer statutes, "a defendant must be a 'committed offender' at the time of the requested discharge in order to be eligible for relief."[8] It stated: "The Court of Appeals in [*State v.*] *LeFever*[9] and the Supreme Court in [*State v.*] *Kolbjornsen*[10] confirmed this position of [*State v.*] *Tucker*[11] by noting in each opinion language establishing that each defendant 'at all relevant times' was a 'committed offender.'" The court reasoned that a defendant who is not covered by §§ 29-3801 to 29-3809 cannot seek relief under § 29-3805. Instead, the court stated, a defendant not covered by those statutes has separate speedy trial rights determined by another statute.[12]

Alternatively, the court explained that "even if the rights pursuant to § 29-3805 somehow permanently attached to an offender," a continuance had extended the 180-day time limit. According to the court, the statutory period began to run on October 13, 2021—when the county attorney acknowledged receipt of Yzeta's request. Thus, the court reasoned, without any extensions the State needed to try Yzeta by April 11, 2022.

[7] See Neb. Rev. Stat. § 83-170(2) (Cum. Supp. 2022) ("[c]ommitted offender means any person who, under any provision of law, is sentenced or committed to a facility operated by [DCS] or is sentenced or committed to [DCS] . . .").

[8] See *State v. Tucker*, 259 Neb. 225, 609 N.W.2d 306 (2000).

[9] *State v. LeFever*, 30 Neb. App. 562, 970 N.W.2d 792 (2022).

[10] *State v. Kolbjornsen*, 295 Neb. 231, 888 N.W.2d 153 (2016).

[11] *State v. Tucker, supra* note 8.

[12] See Neb. Rev. Stat. §§ 29-1205 to 29-1209 (Reissue 2016) (speedy trial statutes).

But the court found that there was a "continuance" in the county court from November 3 to December 22, 2021. Citing one of our decisions, the court described the continuance as having been obtained "either by [Yzeta], or by the [p]rosecutor with the implicit consent of [Yzeta's] attorney."[13] This continuance, the court concluded, "extended the time limit for disposition by 49 days" and "push[ed] the time limit . . . to May 30, 2022." In the May 5 order, the court stated that the case "remain[ed] set for jury trial on May 16." Other than the filing and disposition of Yzeta's motion to dismiss, the record does not explain the delay of the trial from the originally scheduled date to May 16.

## APPEAL

On May 6, 2022, Yzeta took an appeal from the district court's order. The State filed a petition to bypass review by the Nebraska Court of Appeals, which we granted.[14]

## ASSIGNMENT OF ERROR

Yzeta's sole assignment of error is that the district court erred in overruling his motion to dismiss for lack of jurisdiction pursuant to the intrastate detainer statutes.

## STANDARD OF REVIEW

[1] To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.[15]

## ANALYSIS

In Nebraska, there are both constitutional and statutory protections of a criminal defendant's right to a speedy trial. Our state's constitution confers the right to "a speedy public trial by

---

[13] See *State v. Kolbjornsen, supra* note 10.

[14] See Neb. Rev. Stat. § 24-1106(2) (Cum. Supp. 2022).

[15] *State v. Moore*, 312 Neb. 263, 978 N.W.2d 327 (2022).

an impartial jury."[16] The U.S. Constitution does likewise.[17] To effectuate this right, the Legislature has enacted three statutory schemes with detailed procedures: the interstate Agreement on Detainers statutes,[18] the speedy trial statutes,[19] and the intrastate detainer statutes.[20] These statutory schemes were originally enacted, respectively, in 1963,[21] 1971,[22] and 1984.[23] Each has a different focus. Neither the parties nor the court below relied on the constitutional provisions or the interstate Agreement on Detainers statutes. Only the latter two statutory schemes have potential application here.

[2] We agree with the district court that the crux of this appeal lies in whether the intrastate detainer statutes applied to Yzeta after DCS discharged him from custody. The intrastate detainer statutes provide a procedure by which a Nebraska prison inmate may assert his or her right to a speedy trial on pending Nebraska charges.[24]

There is no factual dispute. The parties agree that Yzeta was a Nebraska prison inmate when he requested disposition of the untried charges. He does not dispute that DCS discharged him from its custody on December 29, 2021, or that as of that date, fewer than 180 days had elapsed. Instead, he disputes the legal significance of that discharge.

---

[16] Neb. Const. art. I, § 11. See *State v. Bruns*, 181 Neb. 67, 146 N.W.2d 786 (1966).

[17] See, *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *Klopfer v. North Carolina*, 386 U.S. 213, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967).

[18] See Neb. Rev. Stat. §§ 29-759 to 29-765 (Reissue 2016) (interstate Agreement on Detainers statutes).

[19] See §§ 29-1205 to 29-1209.

[20] See §§ 29-3801 to 29-3809.

[21] See 1963 Neb. Laws, ch. 154, §§ 1 to 7, pp. 543-52.

[22] See 1971 Neb. Laws, L.B. 436.

[23] See 1984 Neb. Laws, L.B. 591.

[24] See *State v. Ebert*, 235 Neb. 330, 455 N.W.2d 165 (1990) (citing *State v. Soule*, 221 Neb. 619, 379 N.W.2d 762 (1986)).

## Jurisdiction

[3,4] Although neither party challenges this court's jurisdiction, we must briefly consider it. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[25] We have said that the denial of a speedy trial claim governed by the intrastate detainer statutes is a final, appealable order.[26]

Our recent decision that we lack jurisdiction of an interlocutory appeal from the denial of a motion for discharge based on constitutional speedy trial grounds[27] has no application here. Yzeta's motion was based solely on the intrastate detainer statutes, as was the district court's order challenged on appeal. And Yzeta assigns error only on that basis. We have jurisdiction of this appeal. We turn to the parties' arguments.

## Parties' Arguments

Yzeta argues that intrastate detainer statutes applied throughout the proceedings below, because he was imprisoned when he initially requested a speedy disposition pursuant to § 29-3803. Even though DCS discharged him on December 29, 2021, Yzeta contends that § 29-3805 was the "exclusive remedy" available to him when he moved to dismiss the case on April 22, 2022.[28]

The State argues that even if the intrastate detainer statutes applied to Yzeta during the period in which he was imprisoned, the intrastate detainer statutes ceased to apply when DCS discharged him from custody. The State points to the plain language of § 29-3803 and asserts that Yzeta was no longer a "person who is imprisoned in a facility operated by [DCS]" on April 22, 2022, when he filed the motion. The State also

---

[25] *State v. Pauly*, 311 Neb. 418, 972 N.W.2d 907 (2022).

[26] *State v. Tucker, supra* note 8.

[27] See *State v. Abernathy*, 310 Neb. 880, 969 N.W.2d 871 (2022).

[28] Brief for appellant at 8, 9 (first citing *State v. Ebert, supra* note 24, and then citing *State v. Kolbjornsen, supra* note 10).

asserts that filing a motion pursuant to § 29-3805 is analogous to filing a motion for postconviction relief, because "[b]eing incarcerated is a condition precedent" to obtaining relief.[29]

## Principles of Statutory Interpretation

[5-7] At this point, we recall familiar principles of statutory interpretation. Statutory interpretation begins with the text, and the text is to be given its plain and ordinary meaning. A court will not read meaning into a statute that is not warranted by the legislative language or read anything plain, direct, or unambiguous out of a statute.[30] When interpreting a statute, a court must give effect, if possible, to all the several parts of a statute and no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided.[31] Statutes relating to the same subject matter will be construed so as to maintain a sensible and consistent scheme, giving effect to every provision.[32]

## Focus on Intrastate Detainer Statutes

The intrastate detainer statutes, read together, focus on a "prisoner" and provide procedures applicable to a "prisoner." Each section of these statutes, to the extent it focuses on the person accused, does so only to the extent that the person is a "prisoner in the custody" of DCS.

Section 29-3802 requires DCS' director to "promptly inform . . . *each prisoner in the custody* of [DCS]" of any untried indictment, information, or complaint. (Emphasis supplied.) It also requires the director to inform the prisoner

---

[29] Brief for appellee at 9 (citing Neb. Rev. Stat. § 29-3001(1) (Reissue 2016), which states that "[a] *prisoner in custody under sentence* and claiming a right to be released . . . may file a verified motion, in the court which imposed such sentence, stating the grounds relied upon and asking the court to vacate or set aside the sentence" (emphasis supplied)).

[30] *State v. Space*, 312 Neb. 456, 980 N.W.2d 1 (2022).

[31] *Id.*

[32] *State v. Wines*, 308 Neb. 468, 954 N.W.2d 893 (2021).

of his or her right to request final disposition of the charge or charges.[33]

Section 29-3803 implicitly defines a prisoner as "[a]ny *person who is imprisoned in a facility operated by* [*DCS*]." (Emphasis supplied.) That phrase uses the present tense of "is imprisoned."[34] This section then authorizes a "*prisoner*" to request, via the director, "final disposition of any untried indictment, information, or complaint pending against him or her in this state."[35] It goes on to specify procedures regarding the "*prisoner*[*'s*]" request.[36]

Section 29-3804 empowers a prosecutor to "have a *prisoner, . . . who is serving a term of imprisonment in any facility operated by* [*DCS*]," made available "in order that speedy and efficient prosecution may be had." (Emphasis supplied.) Here again, the statute uses the present tense of "is serving."[37]

If a prisoner makes the request authorized by § 29-3803, § 29-3805, the speedy trial section of the intrastate detainer statutes, generally provides a 180-day time limit to commence a trial. The first sentence of § 29-3805 requires the untried indictment, information, or complaint to "be brought to trial with *the prisoner* or his or her counsel being present." (Emphasis supplied.) This terminology speaks to the status of the defendant as a "prisoner" at the time of trial.[38] Obviously, if the person ceases to be a prisoner before being brought to trial and has not regained that status, he or she cannot be a prisoner at the time of trial.

Section 29-3806 specifies a prisoner's status during any period of temporary custody by the prosecuting jurisdiction prior to a prisoner's discharge. Under this section, "the

---

[33] See § 29-3802.

[34] See § 29-3803.

[35] *Id*. (emphasis supplied).

[36] See § 29-3803(1) to (3) (emphasis supplied).

[37] See § 29-3804.

[38] See § 29-3805.

prisoner shall not be classified as a pretrial detainee but shall be deemed to remain in custody of [DCS]."[39] It follows that after discharge by DCS, the person would be either released from custody or held as a pretrial detainee by the prosecuting jurisdiction subject to posting bail. This section does not contemplate a person's being classified as a "prisoner" after discharge by DCS.

Section 29-3807 voids a "prisoner['s]" request for disposition of untried charges if he or she escapes from custody. Read together with § 29-3806, it seems clear that an escape after DCS discharges the prisoner—in other words, after he or she ceases to be a prisoner and becomes only a pretrial detainee— would not be treated as an escape from DCS.

Finally, § 29-3809 speaks to the costs of transportation of "prisoners." It makes no sense to speak of a person who has been discharged from DCS' custody as a "prisoner" after the date of discharge.

[8] Our focus on the plain text leads to one conclusion: The intrastate detainer statutes apply only to a prisoner in the custody of DCS. We agree with the State that we cannot disregard the language used throughout these statutes, which effectively defines a "prisoner" as "[a] person who is imprisoned in a facility operated by [DCS]."[40]

Yzeta tries to avoid this plain meaning by arguing that the language defining "prisoner" does not appear in § 29-3805, which, he argues, means that a defendant need not be incarcerated at the time when he or she files the motion to dismiss. We disagree.

Yzeta's argument violates principles of statutory interpretation, which we recited above. To the extent he argues that we should disregard the intrastate detainer statutes' definition of "prisoner," he asks us not to read the statutes together or, if we do, to ignore the definition. This we cannot do. Moreover,

[39] § 29-3806.

[40] See § 29-3803.

his argument effectively asserts that between December 29, 2021 (the discharge date), and April 11, 2022 (the date falling 180 days after the county attorney received his request), he would have been present at trial as a "prisoner," as that term is used in § 29-3805. Not so. He ceased to be a "prisoner" under § 29-3805 upon the date of discharge.

Yzeta's opening brief relies upon four of our prior decisions and a prior Court of Appeals' decision applying the intrastate detainer statutes.[41] But all of those decisions differ fundamentally from the situation here. There, the defendants were prisoners, within the meaning of the intrastate detainer statutes, at all relevant times. In other words, a continuous period from the time of making (or failing to make) a request for speedy disposition to and including the time of filing a motion to dismiss under § 29-3805. Here, the period of imprisonment stopped upon Yzeta's discharge. It became impossible for him to reach 180 days of imprisonment after making his request.

[9] Yzeta argues that "if the Legislature wanted the one hundred eighty day 'clock' to stop, it could say so in the statute."[42] But in this way, he would have us disregard the words actually used, because, he contends, the Legislature could have used other words. In construing a statute, an appellate court's objective is to determine and give effect to the legislative intent of the enactment.[43] The plain language persuades us that in enacting the intrastate detainer statutes, the Legislature intended to provide a remedy only to persons imprisoned in the custody of DCS and only during the term of that imprisonment. Expanding our focus to all of Nebraska's speedy trial statutes confirms that conclusion.

---

[41] Brief for appellant at 8 (citing *State v. Kolbjornsen, supra* note 10; *State v. Tucker, supra* note 8; *State v. Ebert, supra* note 24; *State v. Soule, supra* note 24; and *State v. LeFever, supra* note 9).

[42] Brief for appellant at 8.

[43] *State v. Robbins*, 297 Neb. 503, 900 N.W.2d 745 (2017).

### Expanded Focus on All
### Speedy Trial Statutes

[10] As we pointed out above, Nebraska has three statutory schemes for the protection of the speedy trial rights of criminal defendants. Components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of an act are consistent, harmonious, and sensible.[44] We expand our focus to all three enactments.

[11] The constitutional right to a speedy trial and the statutory implementation of that right exist independently of each other.[45] Prior to U.S. Supreme Court decisions applying the 6th Amendment to the states under the Due Process Clause of the 14th Amendment,[46] this court had declared that our state constitutional right to a speedy trial[47] was "self-executing and in accordance with" the 6th Amendment.[48] We said that "[w]hat is a fair and reasonable time [for trial] in each particular case is always in the discretion of the court."[49]

In an evident effort to provide more definitive protection, the Legislature continued to address the perceived problem. Through the interstate Agreement on Detainers statutes, it had already addressed the situation where a prisoner in one state was the subject of an untried indictment, information, or complaint in another state.[50] In 1971, it remedied most of the

[44] *State v. Vanderford*, 312 Neb. 580, 980 N.W.2d 397 (2022).

[45] *State v. Webb*, 311 Neb. 694, 974 N.W.2d 317 (2022).

[46] See, *Barker v. Wingo, supra* note 17; *Dickey v. Florida*, 398 U.S. 30, 90 S. Ct. 1564, 26 L. Ed. 2d 26 (1970); *Smith v. Hooey*, 393 U.S. 374, 89 S. Ct. 575, 21 L. Ed. 2d 607 (1969); *Klopfer v. North Carolina, supra* note 17.

[47] See Neb. Const. art. I, § 11.

[48] *Maher v. State*, 144 Neb. 463, 474, 13 N.W.2d 641, 649 (1944).

[49] See *id.* at 475, 13 N.W.2d at 649.

[50] See §§ 29-759 to 29-765.

problem by adoption of the speedy trial statutes.[51] Finally, in 1984, the Legislature filled the remaining gap by means of the intrastate detainer statutes.[52] Construed together, these three enactments provide a consistent, harmonious, and sensible statutory protection of the Nebraska and federal constitutional rights to a speedy trial. We perceive no intent to apply more than one of these enactments simultaneously to a single individual in a single case.

Other states have interpreted similar intrastate detainer statutes to apply only to defendants who remain in the physical custody of the state. Among other states, Missouri and Kansas have adopted the Uniform Mandatory Disposition of Detainers Act (UMDDA), on which Nebraska's intrastate detainer statutes are based.[53]

In *State ex rel. Haynes v. Bellamy*,[54] the Missouri Court of Appeals held that the UMDDA does not apply to a defendant who was released from custody and placed on parole during the 180-day period. The court first examined the plain language of the statutes, which referred to confined persons and inmates. It explained that this language revealed "the assumption that the parties using the statute would be serving their prison terms *before and after* the statute was utilized."[55] The court held: "'Once a prisoner is released, his rights regarding the right to a speedy trial are the same as those of any other individual.'"[56]

---

[51] See §§ 29-1205 to 29-1209.

[52] See §§ 29-3801 to 29-3809.

[53] See *State v. Soule, supra* note 24.

[54] *State ex rel. Haynes v. Bellamy*, 747 S.W.2d 189 (Mo. App. 1988).

[55] *Id.* at 190 (emphasis supplied) (citing *State v. Thompson*, 19 Ohio App. 3d 261, 483 N.E.2d 1207 (1984)).

[56] *Id.* at 190. See, also, *State v. Harris*, 108 S.W.3d 127, 128 (Mo. App. 2003) ("[o]nce a defendant is released from prison within the 180-day time limit . . . , he or she loses the benefit of the statute"); *State v. Peterson*, 30 S.W.3d 209 (Mo. App. 2000).

The Supreme Court of Kansas interpreted the UMDDA and reached the same conclusion in *State v. Julian*.[57] Similar to the circumstances in *Bellamy*, the defendant was released from custody and paroled before the running of the 180-day time limit. The court noted that the UMDDA was "designed to relieve prisoners of the unfavorable consequences of pending detainers."[58] It reasoned that "[n]o adverse consequences flow to a probationer or a parolee from a detainer"[59] and concluded that the act no longer applied to the defendant.

[12] We agree with the construction placed on similar intrastate detainer statutes by the Missouri and Kansas courts. We hold that the intrastate detainer statutes, including the speedy trial provision of § 29-3805, cease to apply to a criminal defendant when he or she is discharged from the custody of DCS. Thus, Nebraska's intrastate detainer statutes no longer applied to Yzeta after DCS discharged him from custody.

## DEFINITION OF "INDICTMENT, INFORMATION, OR COMPLAINT"

The State also argues that the intrastate detainer statutes did not apply to Yzeta because, according to the State, the charges were not pending against him until an "indictment, information, or complaint" was filed in the district court. The State asserts that Yzeta "jumped the gun by several weeks"[60] when he first requested a speedy disposition, because the State had not yet filed the charges "in the court in which they could be tried."[61] Thus, the State suggests, his motion was "at least premature" and "at worst, a nullity."[62]

---

[57] *State v. Julian*, 244 Kan. 101, 765 P.2d 1104 (1988).

[58] *Id.* at 103, 765 P.2d at 1106.

[59] *Id.* at 105, 765 P.2d at 1107. See, also, *State v. Vonbehren*, 777 N.W.2d 48 (Minn. App. 2010).

[60] Brief for appellee at 8-9.

[61] *Id.* at 11.

[62] *Id.* at 8.

[13,14] Yzeta contends that the State did not raise this argument below, and we do not find it in the record. An issue not presented to or decided on by the trial court is not an appropriate issue for consideration on appeal.[63] But regardless, in light of our resolution of the main issue, we need not address the State's additional argument. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[64]

## CONCLUSION

We conclude that the speedy trial section of the intrastate detainer statutes ceased to apply to Yzeta when he was discharged from DCS' custody. We express no opinion regarding Yzeta's status under the speedy trial statutes. We affirm the district court's order overruling Yzeta's motion to dismiss.

AFFIRMED.

---

[63] *State v. Lessley*, 312 Neb. 316, 978 N.W.2d 620 (2022).

[64] *State v. Moore, supra* note 15.