IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. PIENING

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLANT,

V.

TYLER L. PIENING, APPELLANT AND CROSS-APPELLEE.

Filed November 18, 2025.    No. A-25-095.

Appeal from the District Court for Saline County: DAVID J. A. BARGEN, Judge. Affirmed.

Mark E. Rappl, of Naylor & Rappl Law Office, for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

RIEDMANN, Chief Judge, and MOORE and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

After a jury trial in the county court for Saline County, Tyler L. Piening (Piening) was found guilty of driving under the influence of alcohol ("DUI - .15+"). Piening appealed his conviction to the district court, arguing the audio of a 911 call was improperly received as evidence at trial over his hearsay and spousal privilege objections. The district court found the audio to be inadmissible hearsay but concluded its admission at trial was harmless and affirmed Piening's conviction. Piening now appeals to this court. The State cross-appeals, claiming the district court erred in its determination that the audio was inadmissible hearsay and by failing to reach Piening's spousal privilege argument. We affirm.

- 1 -

## II. BACKGROUND

### 1. CHARGES AGAINST PIENING

Piening and his wife, Kimberly Piening (Kimberly), were involved in a single vehicle accident after their truck ran off a gravel road into a ditch and hit a tree during the early morning hours of October 29, 2022. At some point following the crash, Kimberly placed a 911 call and identified "Tyler" as the driver. Rescue personnel were dispatched to assist. Upon arrival, law enforcement noticed Piening had a severe head laceration and exhibited signs of intoxication. He was subsequently transported to a nearby hospital, and a blood draw was conducted pursuant to a warrant. The results showed Piening had a blood alcohol content of ".309g/100ml."

On December 13, 2022, the State filed a criminal complaint in the county court for Saline County charging Piening with driving under the influence of alcohol, in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2021). The complaint also alleged he "had a concentration of fifteen-hundredths of one gram or more by weight of alcohol per one hundred milliliters" of his blood. Piening entered a written plea of not guilty and demanded a jury trial.

### 2. MOTIONS IN LIMINE

Various pretrial motions were filed in this case. Pertinent to this appeal, Piening filed two motions in limine. The first sought an order prohibiting Kimberly from being "called as a witness against" him pursuant to Nebraska's spousal privilege, as codified under Neb. Evid. R. 505, Neb. Rev. Stat. § 27-505(2) (Reissue 2016). The county court granted Piening's motion. Piening then filed a second motion in limine seeking to determine the admissibility of Kimberly's 911 call. In his motion, Piening asserted the 911 audio would (1) violate spousal privilege, (2) constitute inadmissible hearsay, and (3) contravene his constitutional right to confront the witnesses against him if introduced at trial.

At the evidentiary hearing on Piening's second motion in limine, the State argued Kimberly's 911 call did not make her a "witness against" her husband as contemplated by § 27-505(2). The State further contended the call, while hearsay, was admissible as a present sense impression. Piening countered, arguing the introduction of the 911 audio at trial would effectively make Kimberly a witness against him within the meaning of § 27-505(2). He also asserted the present sense impression exception was inapplicable because the State could not show the 911 call occurred immediately after the accident. The county court took the motion under advisement.

The county court entered an order overruling Piening's second motion in limine. The court determined spousal privilege did not preclude the State from offering the 911 audio because it would not make Kimberly a "witness" within the meaning of § 27-505(2). The court further concluded that Kimberly's statements, while hearsay, were admissible as both excited utterances and present sense impressions under Neb. Evid. R. 803, Neb. Rev. Stat. § 27-803(1) and (2) (Cum. Supp. 2024). The court also found that use of the 911 audio at trial would not contravene the Confrontation Clause of the U.S. Constitution or Neb. Const. art. I, § 11.

### 3. COUNTY COURT JURY TRIAL

A jury trial was held on February 9, 2024. The evidence adduced at trial is summarized as follows.

### (a) 911 Call

An audio recording of the 911 call was received at trial over Piening's spousal privilege and hearsay objections. The State referenced the call during its opening statement and played the audio for the jury during its case-in-chief and closing arguments.

The recording revealed that on October 29, 2022, at approximately 1:09 a.m., a 911 dispatcher for the Saline County Sheriff's Department received a call from a female who stated, "Can you help us, we have wrecked the truck." When asked if anyone was injured, she responded, "the driver and me"; she also indicated that they were "kind of in a ditch" and there were "head injuries." During the call, the female identified herself as "Kimberly Piening" and when asked what happened, Kimberly said the "driver lost control" but she confirmed he was "awake and conscious." Without prompting, Kimberly also indicated she did not want to get out because she was "worried that the truck [was] going to roll." Kimberly said there was "bleeding on the windshield and the window." When asked for the driver's name, she responded, "Tyler." The dispatcher traced the location of the accident to "County Road C" and "County Road 2250" and notified personnel to assist.

During direct examination by the State, the dispatcher independently testified to Kimberly's statements that identified "Tyler" as the driver of the vehicle. According to the dispatcher, Kimberly was "very calm" during the call. She was also "very concise in most of her questions[,]" and "was able to provide quite a bit of good information" to the dispatcher. Piening made no objections to this testimony. However, when the State offered the 911 audio recording, Piening's attorney asked to "voir dire the witness." During that examination, the dispatcher confirmed that Kimberly was calm during the call and that the dispatcher did not know when the accident occurred, just when the 911 call was made. The jury was then excused, at which time defense counsel objected to the recording on the basis of spousal privilege, and that the evidence did not fall under an exception to the hearsay rule; specifically, that it did not qualify as a present sense impression or an excited utterance. The county court overruled the objection, finding the 911 audio recording did not violate spousal privilege, and further, that although not admissible under the excited utterance exception, it was admissible under the present sense impression exception to the hearsay rule.

### (b) Crash Scene

According to the testimony of Deputy Tom Hudiburgh of the Saline County Sheriff's Office, at approximately 1:10 a.m. on October 22, 2022, he was "patrolling" in the vicinity of "either Wilbur or Dorchester" when he received a call for service regarding "[a]n accident with injuries." While en route to the accident site, he was advised over the radio by dispatch "that the male subject was the driver." Deputy Hudiburgh stated that the road conditions around "County Road C" were "[n]ormal, clear" and visibility was "[f]ine, normal."

Deputy Hudiburgh arrived at the scene at 1:19 a.m. and observed a single cab pickup truck resting at a "slant" in a "steep" ditch. The truck had struck a tree head-on. The deputy reached the crash site at "the same time" as fire and rescue personnel. He, along with fire and rescue, approached the truck, helped open the "driver's side door," and he saw "a male subject in the driver's side seat and a female subject in the passenger seat holding her dog." The keys to the truck were "[i]n the ignition" and "in the on position."

Due to the steep angle of the ditch, both occupants had to exit the truck through the driver's side door. Deputy Hudiburgh directed the "male subject," later identified as Piening, to exit the vehicle, but "he was being verbally uncooperative and failing to comply with EMS." Piening had to be "taken out of the vehicle by EMS and treated for his injuries." Deputy Hudiburgh noticed Piening had a "cut on his head" that had "blood around it." Piening was slurring his speech; had "red, bloodshot, watery eyes"; and had a "strong odor" of alcohol emanating from his person. According to the deputy, Piening was "very animated and argumentative" and indicated that "he was on a fire department, and he didn't need medical, . . . and he knew what he was doing."

Deputy Hudiburgh next assisted in getting the dog out of the vehicle, followed by helping Kimberly, who they "pulled . . . right out through the driver's door." According to the deputy, Kimberly started arguing with her husband to "'let them help you, let them help you.'"

Deputy Hudiburgh authored an accident report, which was received by the county court over Piening's hearsay objection. The report listed Piening as the "[o]wner" and "[d]river" of the truck and indicated he was positioned in the "[f]ront" "[l]eft" seat. When asked why Piening was listed as the "driver" in the report, Deputy Hudiburgh responded: "Because he was the driver of the vehicle."

Deputy Hudiburgh conceded during cross-examination that he had no personal knowledge of when the accident occurred.

Deputy Dillon Semrad was also dispatched to the accident site. According to Deputy Semrad, while driving to the scene, he received a "phone call from dispatch" and was advised there was a "driver involved and his name [was] Tyler." Deputy Semrad arrived at the crash site "prior to 1:19" a.m. and saw fire and rescue personnel "actively pulling" the "driver" out of the "driver's side of the vehicle." When he approached the truck, the deputy noticed a "strong odor of alcohol coming from the cab of the vehicle." He observed the "driver" of the vehicle to have "bloodshot, watery eyes" and "his person also smelled of alcohol[.]" Additionally, the "driver" had a "long gash on the side of his head" that was actively bleeding. Deputy Semrad later identified the "driver" as Piening.

When questioned on cross-examination about the phone call he received from dispatch that identified "Tyler" as the driver, Deputy Semrad admitted he did not include that fact in a police report he authored, despite it being an "important detail[.]" The first time Deputy Semrad ever mentioned the phone call was at trial. He agreed that "the only evidence" he relied upon when forming his opinion that Piening was the driver of the truck was the fact that he "saw him being assisted out of the driver's side of the vehicle."

On redirect examination, Deputy Semrad was asked to explain why he had not mentioned in his report or during a previous pretrial hearing the phone call with dispatch. He explained that "[b]etween then and now, more information . . . came to pass that a conversation was had between us, the dispatcher did advise that she advised me [of] that information via a cell phone call." He confirmed that he was "able to speak with the dispatcher on this call after [he] had already submitted [his] reports."

Photographs of the exterior of the truck were received by the county court. However, no evidence was collected from the truck, nor were any photographs taken of the interior of the vehicle.

### (c) Blood Draw

After Piening was removed from the truck, he was transported to a nearby hospital. Based on his observations, Deputy Semrad drafted a "blood draw warrant," which was approved by a judge. He then traveled to the hospital, served the warrant on an emergency room nurse, and provided a "sealed blood draw kit."

A registered nurse at the hospital conducted a blood draw on Piening at 2:13 a.m. Prior to the procedure, the nurse noticed Piening "smelled like alcohol," "was unable to stand unassisted," and "did have some slurred speech[.]" She also observed "an obvious facial injury" where Piening's "skull" was visible. After the nurse retrieved blood specimens from Piening, she gave them to Deputy Semrad, who "labeled them, closed them, [and] sealed" them. Deputy Semrad took the specimens to the Saline County Sheriff's Office and "placed [them] into evidence locker three." "[A]t some point in time," the blood specimens were taken to the "State of Nebraska Lab."

At trial, the parties stipulated that a forensic analyst tested Piening's blood samples and that the analysis "adhere[d] to recognized standards." The results of the test showed Piening had a "[b]lood [a]lcohol [c]oncentration of .309g/100ml."

### 4. PIENING'S CONVICTION AND SENTENCE

The jury found Piening guilty of driving under the influence of alcohol while having a concentration of at least .15 of 1 gram or more by weight of alcohol per 100 milliliters of his blood. On April 16, 2024, the county court sentenced Piening to 7 days in jail, ordered him to pay a $500 fine, revoked his driver's license for 1 year, and directed him to apply for an ignition interlock permit.

### 5. APPEAL TO DISTRICT COURT

Piening appealed his conviction to the district court. On appeal, he argued the 911 audio was inadmissible hearsay and violated spousal privilege.

On January 17, 2025, the district court issued an order affirming Piening's conviction and sentence. Although the court determined the 911 call was inadmissible hearsay that did not meet the definition of a present sense impression, it concluded the audio was cumulative evidence and, therefore, harmless error. In its harmless error analysis, the court opined that "[o]ther circumstantial evidence supported a finding that [Piening] was the driver of the vehicle." The court specifically referenced Deputy Semrad's testimony, stating "he observed [Piening] in the driver's seat[.]" The court also determined the "steep angle of the vehicle" would make a "change in positions within the vehicle" unlikely. Because the court determined the 911 audio was hearsay, it did not reach Piening's spousal privilege argument.

Piening appeals and the State cross-appeals.

## III. ASSIGNMENTS OF ERROR

Piening assigns that the district court "erred in finding that the trial court's improper admission at trial of the 911 call was harmless error."

On cross-appeal, the State assigns the district court erred by (1) finding the 911 audio was inadmissible under the present sense impression exception to the hearsay rule and (2) by failing to

address whether the audio was protected by "the spousal privilege recognized in Neb. Rev. Stat. § 27-505(2)."

## IV. STANDARD OF REVIEW

Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *State v. Strawn*, 318 Neb. 859, 19 N.W.3d 761 (2025). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

## V. ANALYSIS

### 1. HARMLESS ERROR

Piening's sole contention on appeal is that the district court erred in its determination that the improper admission of the 911 audio at trial was harmless. Assuming without deciding that the 911 audio was inadmissible, we agree with the district court that it was nevertheless cumulative to other properly admitted evidence and was therefore harmless beyond a reasonable doubt.

### (a) Legal Framework

Errors, other than structural errors, which occur within the trial and sentencing process, are subject to harmless error review. *State v. Aquino*, 318 Neb. 771, 19 N.W.3d 222 (2025). This is consistent with Neb. Rev. Stat. § 27-103(1) (Reissue 2016), which states that error may not be predicated upon a ruling which admits evidence unless a substantial right of a party is affected, and Neb. Rev. Stat. § 29-2308(1) (Reissue 2016), which provides that no judgment in a criminal case shall be set aside or new trial granted because of the admission of evidence, unless a substantial miscarriage of justice has actually occurred. See *State v. Aquino, supra*. Harmless error jurisprudence recognizes that not all trial errors, even those of constitutional magnitude, entitle a criminal defendant to the reversal of an adverse trial result. *Id.* An error in admitting or excluding evidence in a criminal trial, whether of constitutional magnitude or otherwise, is prejudicial unless it can be said that the error was harmless beyond a reasonable doubt. *Id.*

Harmless error review looks to the basis on which the trier of fact actually rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the actual guilty verdict rendered in the questioned trial was surely unattributable to the error. *Id.* Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt. *Id.* Cumulative evidence means evidence tending to prove the same point to which other evidence has been offered. *State v. Anthony*, 316 Neb. 308, 4 N.W.3d 393 (2024).

### (b) 911 Audio Recording Was Cumulative

The main issue to be resolved by the jury at trial was whether Piening "operate[d]" or was in "actual physical control" of the truck on the morning of the crash. § 60-6,196. In his brief, Piening argues the 911 audio was the "*only* direct evidence" tending to show he "was the driver of the vehicle." Brief for appellant at 12 (emphasis in original). He further asserts "[a]ll other

evidence presented by the State at trial attempt[ing] to establish [he] was the driver was merely circumstantial and speculative." *Id.*

There are two kinds of evidence, direct and circumstantial. *Estate of Block v. Estate of Becker*, 313 Neb. 818, 986 N.W.2d 726 (2023). Direct evidence directly proves the fact in dispute without inference or presumption. *Id.* Circumstantial evidence is evidence of one or more facts from which the existence of the fact in dispute may logically be inferred. *Id.* The law makes no distinction between these two kinds of evidence. *Id.* A fact may be proved by direct evidence alone, circumstantial evidence alone, or a combination of the two. *Id.* Circumstantial evidence is not inherently less probative than direct evidence, and a fact proved by circumstantial evidence is nonetheless a proven fact. *Id.* Thus, the State was not required to proffer direct evidence that Piening was the operator of the truck to prove its case; the circumstantial evidence was sufficient to do so.

In its order affirming Piening's conviction, the district court engaged in the following harmless error analysis:

> [O]ther circumstantial evidence supported a finding that [Piening] was the driver of the vehicle. Deputy Semrad testified when he arrived on the scene, he observed [Piening] in the driver's seat and [Kimberly] in the passenger seat against the window. He also testified the vehicle had struck a tree on the side of the road and was stopped at an angle in a steep ditch. This is competent circumstantial evidence that [Piening] was driving at the time of the accident, as a change in positions within the vehicle between the occupants under those circumstances would not have occurred given the steep angle of the vehicle toward the passenger side. Such evidence is sufficient to support the conviction in this case.

Piening argues that the district court made certain factual assumptions in its harmless error analysis that are not supported by the record. We agree with Piening that although Deputy Semrad witnessed Piening being "actively pull[ed]" from the "driver's side of the vehicle" upon arrival to the crash site, he did not mention that Piening was positioned in the driver's seat. When asked by the State if he saw Piening in the driver's seat, Deputy Semrad responded, "Yes, he was in that, that side of the vehicle as they were pulling him out of the car." However, evidence adduced at trial showed that both Piening and Kimberly were required to exit the vehicle through the driver's side door because of the steep angle of the ditch. On cross-examination, Deputy Semrad conceded the "only evidence" he relied upon in forming his opinion that Piening was the driver of the truck was his observation that Piening was being "assisted out of the driver's side of the vehicle." Therefore, while the district court referred to Deputy Semrad observing Piening in the driver's seat, it was actually Deputy Hudiburgh who made that observation, as we discuss next.

Before the 911 audio was introduced at trial, Deputy Hudiburgh testified that "he approached the vehicle with fire and rescue who had arrived on scene" "at the same time[.]" When he, along with fire and rescue, "opened the driver's side door," Deputy Hudiburgh observed "a male subject in the driver's seat and a female subject in the passenger seat holding her dog." At this time, the keys were "[i]n the ignition" and "in the on position." Therefore, while the district court may have confused the deputies' names when referring to this evidence, Deputy Hudiburgh's direct observation upon approaching the vehicle supports that Piening was the operator of the vehicle. The State also elicited testimony from Deputy Semrad indicating Piening's head wound

- 7 -

was "actively bleeding" at the crash site. The jury could infer from Piening's fresh wounds that the accident had recently occurred and that he, being in the driver's seat, had operated the vehicle.

Piening also argues that the district court's "conclusions that the occupants of the vehicle could not have changed positions is pure conjecture" and unsupported by the record. Brief for appellant at 11. We disagree. Piening is correct that no evidence relating to the "dimensions of the cab area of the truck" or the "physical attributes" of the occupants was adduced at trial to establish if "changing positions was possible." *Id.* However, other circumstantial evidence supported the court's determination that "a change in positions within the vehicle between the occupants under those circumstances would not have occurred, given the steep angle of the vehicle toward the passenger side" and that the truck "was stopped at an angle in a steep ditch." Various photographs of the outside of the pickup truck were received as evidence. These photographs confirm that the pickup truck was resting at a steep angle in a ditch. The record also shows that Piening had a severe head laceration where his "skull" was visible. This injury required medical attention. The parties further stipulated that the blood draw revealed Piening had a blood alcohol concentration of ".309g/100ml" which is almost 4 times the legal limit. See § 60-6,196(1)(b). The nurse treating Piening also stated that Piening "was unable to stand unassisted" while at the hospital. The precarious positioning of the vehicle, coupled with Piening's severe head injury and intoxication, was sufficient circumstantial evidence for the jury to infer that swapping positions was unlikely under the circumstances.

While we agree with Piening that "[n]one of the State's witnesses observed" him "operating the vehicle that" morning, the facts outlined above were sufficient circumstantial evidence for a jury to infer Piening was the operator of the vehicle. Brief for appellant at 13. As previously articulated, a fact proved by circumstantial evidence is nonetheless a proven fact. See *Estate of Block v. Estate of Becker, supra*.

We also recall that prior to the county court's admission of the 911 audio, the dispatcher testified to the contents of the 911 call without objection. The following testimony was elicited:

> [State's Counsel:] After [Kimberly] identified herself, what happened?
>
> [Dispatcher:] After she identified herself, I just kept her on the phone. I advised her that we still had deputies en route, we had rescue en route. I asked her if the driver was awake and alert. I asked any type of condition updates. She did tell me that the driver was awake and alert, that he was talking to her. I then asked Mrs. Piening what the driver's name was, which she did advise that his name was Tyler.

Therefore, even if the 911 audio recording was excluded at trial, the testimony of the dispatcher would have been considered by the jury. While Piening objected to the 911 audio recording itself, no objection was made during the dispatcher's independent recitation of the content of the 911 call. We do note that Piening asked the county court at a bench conference prior to the 911 audio's admission "to strike any prior mention of what Kimberly said during the 911 call," which included the dispatcher's testimony. However, Piening did not assign as error or argue in his brief that the court apparently denied his motion to strike. Alleged errors of the lower court must be both specifically assigned and specifically argued in a party's brief to be considered by an appellate court. See *State v. Dailey*, 314 Neb. 325, 990 N.W.2d 523 (2023). Further, Piening's motion to strike was not timely; it was made well after the dispatcher relayed Kimberly's statements to the

jury. See *State v. Giessinger*, 235 Neb. 140, 454 N.W.2d 289 (1990) (motion to strike is not timely where testimony has been adduced without objection and where grounds for motion should have been apparent at time of testimony).

The 911 audio recording was substantially identical with evidence admitted and not timely objected to, and, therefore, its admission does not constitute prejudicial error entitling Piening to reversal or a new trial.

In summary, while the district court may have confused the names of the deputies when referencing who directly observed Piening in the driver's seat of the vehicle, the court was nevertheless correct that the 911 audio recording was cumulative to other properly admitted evidence that supported the conviction. Where the evidence is cumulative and there is other competent evidence to support the conviction, the improper admission or exclusion of evidence is harmless beyond a reasonable doubt. *State v. Aquino*, 318 Neb. 771, 19 N.W.3d 222 (2025).

## 2. STATE'S CROSS-APPEAL

The State, on cross-appeal, contends the district court erred by concluding the 911 audio was inadmissible hearsay and by failing to reach the spousal privilege issue. However, we need not resolve those issues in this appeal since we have rejected the only error assigned by Piening in his appeal. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *State v. Yzeta*, 313 Neb. 202, 983 N.W.2d 124 (2023).

## VI. CONCLUSION

For the foregoing reasons, we affirm Piening's conviction.

AFFIRMED.