Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/02/2025 09:11 AM CDT

State of Nebraska, appellee, v.
John G. Strawn, appellant.
___ N.W.3d ___

Filed May 2, 2025.    No. S-24-402.

1. **Courts: Appeal and Error.** Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Appeal and Error.** An appellate court independently reviews questions of law in appeals from the county court.
4. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law that an appellate court resolves independently of the trial court.
5. **Convicted Sex Offender: Appeal and Error.** An appellate court will affirm a court's ruling that a defendant must register under the Sex Offender Registration Act if, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found with a firm conviction that the crime involved sexual contact.

Appeal from the District Court for Sarpy County, Nathan B. Cox, Judge, on appeal thereto from the County Court for Sarpy County, Patricia A. Freeman, Judge. Judgment of District Court affirmed.

Liam K. Meehan, of Higgins Law, for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Papik, J.

John G. Strawn entered into an agreement to plead no contest to two counts of third degree assault. Pursuant to the plea agreement, the State made no mention of sexual contact when providing a factual basis for the charges at the plea hearing. Based on information in the presentence investigation report (PSR), however, the county court found that Strawn had subjected a victim to sexual contact and ordered him to register as a sex offender under Nebraska's Sex Offender Registration Act (SORA). Strawn appealed to the district court, primarily challenging the county court's determination that he was required to register as a sex offender. The district court rejected Strawn's arguments and affirmed the judgment of the county court. Strawn now appeals to us. Finding no merit to his arguments, we too affirm.

## BACKGROUND

*Initial Charges and Plea Hearing.*

Strawn was initially charged in county court with one count of third degree sexual assault, one count of disturbing the peace, one count of third degree assault, and one count of third degree domestic assault. The State alleged in its initial complaint that the victim of the third degree sexual assault charge and the third degree assault charges was "J.B." and that the victim of the third degree domestic assault charge was Dorine Blodgett.

Strawn and the State eventually entered into a plea agreement. Under the plea agreement, Strawn agreed to enter no contest pleas to two counts of third degree domestic assault. The State agreed to dismiss the other charges.

At a plea hearing, the county court, prior to accepting Strawn's pleas, stated on the record that the parties had also agreed that the factual basis provided by the State "would not contain any element of a sexual assault, including any

evidence of sexual contact." The county court stated that such a factual basis on its own would not require that Strawn register as a sex offender under SORA. The county court advised Strawn, however, that if the PSR included evidence "that might suggest you have to register [as a sex offender], that could be a component of . . . the Court's determination based on your plea in this case." The county court additionally advised Strawn that it would make a determination regarding Strawn's obligation to register as a sex offender at the time of sentencing. Strawn stated on the record that he understood.

Consistent with the plea agreement, Strawn entered no contest pleas to two counts of third degree assault. When asked to provide a factual basis for the charges, the prosecutor stated that on or about June 10, 2022, Strawn and a victim identified as "J.D." "were involved in a physical event" and that afterward, Strawn "further threaten[ed] J.D. by threatening to contact her probation officer to ruin her involvement in [d]rug [c]ourt." Although the prosecutor referred to the victim as "J.D.," there appears to be no dispute that the prosecutor was referring to the person identified as J.B. in the complaint. We will thus refer to the victim as "J.B." in this opinion.

The prosecutor continued by stating that on or about June 12, 2022, Blodgett confronted Strawn regarding the prior incident and that an argument ensued in which Strawn told Blodgett, "'I will dig you right down and put you in the ground.'" When asked if there was any objection to the factual basis, Strawn's counsel responded that he had "[n]o comment on the State's factual basis."

The county court accepted Strawn's no contest pleas and found him guilty of the two counts of third degree assault. The county court ordered the preparation of the PSR and scheduled a subsequent sentencing hearing.

*Sentencing Hearing.*

A few days prior to the scheduled sentencing hearing, Strawn filed a brief arguing that, under SORA, the county court could not order him to register as a sex offender. The brief took

the position that under Neb. Rev. Stat. § 29-4003(1)(b)(i)(B) (Cum. Supp. 2020), Strawn could be ordered to register based on his conviction for third degree assault only if there was evidence of sexual penetration or sexual contact in both the factual basis provided by the State and the PSR. Because there was no reference to sexual penetration or sexual contact in the factual basis provided at the plea hearing, Strawn argued, he was not subject to SORA registration.

At the beginning of the sentencing hearing, the county court noted that the PSR had been prepared and would be made a part of the record for sentencing purposes. At the request of Strawn's counsel, the county court incorporated, as part of the PSR, a sentencing memorandum with attached exhibits prepared by Strawn's counsel. The sentencing memorandum included, among other things, additional argument that the county court should not require Strawn to register as a sex offender. Both the State and counsel for Strawn stated that they did not have any other additions or corrections to the PSR.

The PSR included police reports summarizing a statement J.B. made to police regarding her interactions with Strawn on June 10, 2022. At that time, Strawn was dating and living with Blodgett, J.B.'s mother. J.B. informed police that she was staying at Strawn and Blodgett's residence and that, during the early morning hours, she was awakened by Strawn touching her hair and forcefully kissing her. Later, J.B. reported, Strawn grabbed her from behind so that she could feel his erect penis on her backside. She eventually pushed him off and ran into a bathroom and locked the door. The PSR also included a police report regarding an officer's conversation with J.B.'s brother-in-law. J.B.'s brother-in-law reported to police that the day after the incident, J.B. came to his place of work and discussed the incident with him, and that she was visibly shaking and appeared traumatized by the incident. He also reported that while they were talking, Strawn called J.B. several times, and that, when J.B. eventually answered on speakerphone, Strawn said that "'what happened last night won't happen again.'"

After discussing the PSR with counsel for the parties, the county court then stated there were two preliminary matters it would address before pronouncing Strawn's sentences. First, the county court stated that it was required to notify Strawn that because he had been convicted of a misdemeanor crime of domestic violence, "it may be unlawful for you to purchase or possess a firearm" under federal law. The county court stated that if Strawn had questions about whether federal law made it illegal for him to purchase or possess a firearm, he should speak with an attorney.

The county court stated it would next address whether Strawn would be required to register as a sex offender under SORA. The county court observed that it had informed Strawn at the plea hearing that it would determine at sentencing whether he would be required to register and also noted that Strawn's sentencing memorandum had addressed the issue. The county court then asked the State if it wished to offer argument on whether Strawn should be required to register. The prosecutor responded that, pursuant to the plea agreement, the State would not take a position on registration under SORA. When the county court then asked Strawn's counsel if she had "any further arguments or comments" on the registration issue, counsel repeated the argument made in the sentencing brief and memorandum that under § 29-4003(1)(b)(i)(B), Strawn could not be ordered to register because there was no evidence of sexual penetration or sexual contact in the factual basis provided by the State at the plea hearing. Strawn's counsel also argued that Strawn should not be required to register because a psychosexual evaluation had shown that there was a low risk that he would reoffend.

Following argument by Strawn's counsel, the county court explained that it disagreed with Strawn's contention that without reference to sexual penetration or sexual contact in the factual basis, he could not be required to register under SORA. The county court went on to explain that while the factual basis did not refer to sexual penetration or sexual contact,

the PSR included information that on June 10, 2022, Strawn had engaged in conduct that met the definition of sexual contact under Neb. Rev. Stat. § 28-318 (Cum. Supp. 2024), and that it would therefore require Strawn to register under SORA.

The county court then gave the State and counsel for Strawn the opportunity to make arguments regarding sentencing. Strawn declined the opportunity to comment. The county court proceeded to impose sentences for Strawn's convictions. It sentenced Strawn to 24 months of probation with various conditions, including a 60-day period of confinement in the county jail.

Strawn appealed to the district court.

*District Court Appeal.*

Strawn filed a statement of errors in the district court. In it, he asserted that the county court erred (1) by finding that SORA registration could be required when there was no reference to sexual penetration or sexual contact in the factual basis for the plea, (2) by finding that registration was required without a specific finding that the victims were credible, (3) by ordering SORA registration without affording him procedural due process, and (4) by determining Strawn was subject to notice of the federal firearm prohibition under 18 U.S.C. § 922(g)(9) (2018).

The district court accepted briefs from the parties regarding the issues presented on appeal and then issued a written opinion. The district court rejected each of Strawn's arguments and affirmed the judgment of the county court.

Strawn appealed again and filed a petition to bypass the Nebraska Court of Appeals. We granted the petition to bypass.

ASSIGNMENTS OF ERROR

Strawn assigns four errors on appeal, three pertaining to the county court's order that he register as a sex offender under SORA and one regarding the county court's advisement that his conviction may result in federal law prohibiting him from possessing or purchasing firearms. Each of Strawn's

assignments of error is phrased in terms of errors he asserts the county court made, as opposed to errors made by the district court on appeal. Although it would have been more precise in this appeal for Strawn to assign error to the district court's affirmance of the county court's judgment, his assignments are sufficient to advise us of the issues submitted for decision and are thus reviewable. See *State v. Jennings*, 308 Neb. 835, 957 N.W.2d 143 (2021).

With respect to SORA registration, Strawn assigns the county court erred (1) by determining that he could be required to register even though the factual basis did not refer to sexual penetration or sexual contact, (2) by requiring him to register without making a specific credibility finding, and (3) by denying him procedural due process. As to the firearms advisement, Strawn assigns that the county court erred by "subjecting [him] to the federal firearm prohibition."

## STANDARD OF REVIEW

[1-3] Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *State v. Avey*, 288 Neb. 233, 846 N.W.2d 662 (2014). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* An appellate court independently reviews questions of law in appeals from the county court. *Id.*

[4] Statutory interpretation presents a question of law that an appellate court resolves independently of the trial court. *State v. Strong, ante* p. 525, 17 N.W.3d 170 (2025).

## ANALYSIS

*Absence of Evidence of Sexual*
*Contact in Factual Basis.*

Before the county court, the district court, and now before us, Strawn has consistently argued that, because the State made no mention of sexual penetration or sexual contact when

asked to provide a factual basis for the charges to which he had agreed to plead no contest, the county court could not order him to register under SORA. Strawn claims both the text of SORA and our opinion in *State v. Norman*, 282 Neb. 990, 808 N.W.2d 48 (2012) (*Norman I*), compel this outcome. Neither does.

As we have previously explained, SORA provides that persons convicted of certain listed offenses that are not necessarily sexual in nature can nonetheless be required to register. See *id.* Relevant to this case, third degree assault is among the offenses that fall into that category, though § 29-4003(1)(b)(i)(B) provides a limitation as to when registration is required for individuals convicted of such offenses. Under § 29-4003(1)(b)(i)(B), in order for SORA to apply to such offenses, "a court shall have found that evidence of sexual penetration or sexual contact, as those terms are defined in section 28-318, was present in the record, which shall include consideration of the factual basis for a plea-based conviction and information contained in the presentence report."

Strawn reads this language to provide that a person can be ordered to register based on a plea-based conviction for third degree assault only if there is evidence of sexual penetration or sexual contact in both the factual basis provided at the plea hearing and in a PSR. He emphasizes that the word "and" separates "the factual basis for a plea-based conviction" and "information contained in the presentence report." Pointing to a case from this court, he argues that the use of the word "and" signifies a "conjunctive list." See *In re Interest of Levanta S.*, 295 Neb. 151, 167, 887 N.W.2d 502, 514 (2016).

We agree with Strawn about the meaning of the word "and" in this context but disagree with his reading of the provision as a whole. The text of § 29-4003(1)(b)(i)(B) does not state that the trial court must find sexual penetration or sexual contact in both the factual basis and the PSR. It says the court must find sexual penetration or sexual contact "*in the record*." § 29-4003(1)(b)(i)(B) (emphasis supplied). The language goes

on to clarify that the record the trial court must consider in determining whether the defendant engaged in sexual penetration or sexual contact *includes* the factual basis *and* the PSR. The effect of the conjunctive "and" in this context is to direct trial courts to consider both the factual basis and the PSR when determining whether an offense involved sexual penetration or sexual contact. It does not condition a registration obligation on evidence of sexual penetration or sexual contact being found in both the factual basis and the PSR. Strawn's argument asks us to read meaning into the statute that is not reflected in its text, contrary to our well-established principles of statutory interpretation. See *State v. Clausen, ante* p. 375, 385, 15 N.W.3d 858, 866 (2025) ("[a]s we often say, it is not within the province of the courts to read meaning into a statute that is not there or to read anything direct and plain out of a statute").

Strawn's reliance on *Norman I* is also unavailing. In that case, the defendant also entered a no contest plea to a third degree assault charge. Following a sentencing hearing during which both the State and the defendant offered evidence relevant to SORA registration, the trial court ordered the defendant to register under SORA. In explaining that ruling, however, the trial judge stated that he was requiring registration based on statements in the factual basis offered at the plea hearing alone. The defendant later appealed and argued that the trial court denied him procedural due process. We agreed with the defendant, finding that the trial court denied the defendant procedural due process "when it ignored the evidentiary record and instead based its decision" as to SORA registration "solely on the State's assertion of sexual contact in the factual basis for the plea." *Norman I*, 282 Neb. at 1011, 808 N.W.2d at 65. Contrary to Strawn's contention otherwise, our reversal in *Norman I* was premised on the district court's decision to ignore evidence introduced at the sentencing hearing, not on any requirement in § 29-4003(1)(b)(i)(B) that there be evidence of sexual penetration or sexual contact in

both the factual basis and the PSR. Strawn's first assignment of error is meritless.

*Absence of Specific Credibility Finding.*

Strawn next contends that the county court erred by requiring that he register under SORA without making a specific finding that the victims of the assaults to which he entered no contest pleas were credible. Although the county court stated at the sentencing hearing that it had "an obligation to consider credibility of the information" contained within the PSR, Strawn apparently takes the position that the county court was obligated to make an express finding that information within the PSR was provided by credible individuals. We disagree.

Strawn points to no source of authority that supports his argument that the county court was required to make express findings of credibility. In *Norman I*, this court determined what must be shown in order for a defendant convicted of an offense covered by § 29-4003(1)(b)(i)(B) to be subject to SORA's registration requirements. There, we said that registration is required if the trial court "make[s] a finding, based on clear and convincing evidence, [that] the defendant committed an act of sexual penetration or sexual contact related to the incident that gave rise to the defendant's conviction." *Norman I*, 282 Neb. at 1011, 808 N.W.2d at 65. We said nothing that would suggest that trial courts must make an express credibility finding before requiring a defendant to register.

To the extent Strawn more broadly argues that the district court erred by finding that he committed an act of sexual contact, we also must disagree. A prior decision of this court establishes how appellate courts are to analyze such challenges. After we reversed the district court's initial registration order in *Norman I*, we remanded the cause to the district court. On remand, the district court again ordered the defendant to register under SORA, and the defendant again appealed to us, arguing that the district court erred by finding that his crime involved sexual contact. See *State v. Norman*, 285 Neb. 72, 824 N.W.2d 739 (2013) (*Norman II*).

[5] In *Norman II*, we determined that when a defendant challenges a trial court's finding that a defendant engaged in sexual penetration or sexual contact for purposes of SORA registration, appellate courts should review under a sufficiency of the evidence standard, but one that incorporates the clear and convincing evidence quantum of proof. Accordingly, an appellate court will affirm a court's ruling that a defendant must register under SORA if, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found with a firm conviction that the crime involved sexual contact. *Norman II, supra*.

Under this standard of review, Strawn cannot show that the county court erred by ordering him to register under SORA. Strawn does not argue that the PSR lacked any evidence that he subjected J.B. to sexual contact. Indeed, Strawn's counsel admitted at oral argument that he was not disputing that J.B.'s account of the incident reflected in police reports within the PSR, if true, would meet the statutory definition of sexual contact. Instead, Strawn argues only that J.B.'s allegations lacked credibility.

Strawn's attack on J.B.'s credibility is not the stuff of a successful sufficiency of the evidence challenge. When a party argues that there was insufficient evidence, we often emphasize that an appellate court "does not resolve conflicts in the evidence, *pass on the credibility of witnesses*, or reweigh the evidence." See, e.g., *State v. Perry, ante* p. 613, 619, 17 N.W.3d 504, 510 (2025) (emphasis supplied). And we made clear in *Norman II* that challenges to determinations that a defendant engaged in sexual contact for purposes of SORA registration are to be reviewed like other sufficiency of the evidence challenges. *Norman II*, 285 Neb. at 76, 824 N.W.2d at 743 ("[a]nd, as with any sufficiency claim, . . . we do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence") (internal quotation marks omitted).

Strawn argues that other language in our opinion in *Norman II* indicates that this court can and should independently assess the credibility of J.B.'s account even while analyzing the sufficiency of the evidence. In *Norman II*, after we had concluded that there was sufficient evidence of sexual contact, the opinion went on to "express one final note on the issue of credibility." 282 Neb. at 79, 824 N.W.2d at 744. There, we said that "one could argue" that the trial court in *Norman II* could not have made a credibility determination regarding the account of a victim who did not testify before the trial court or that an appellate court "would not necessarily be required to defer to such a credibility determination because the [trial] court had the same evidence before it as we do—that being a cold record." 282 Neb. at 79, 824 N.W.2d at 744-45. To the extent this dicta suggests that appellate courts may independently assess credibility when a defendant challenges a trial court's finding that a defendant engaged in sexual penetration or sexual contact for purposes of SORA registration, it is inconsistent with the holding of the case and it is disapproved.

In any event, in this case other information in the PSR—such as the information reported to police by J.B.'s brother-in-law—tended to corroborate J.B.'s allegations regarding Strawn's conduct on June 10, 2022. We conclude that the information in the PSR, taken together, could lead a rational trier of fact to have found with a firm conviction that Strawn subjected J.B. to sexual contact. Strawn's second assignment of error is meritless.

*Procedural Due Process.*

Strawn challenges the county court's SORA registration requirement in one other respect: He argues that he was denied procedural due process. Once again, one of our *Norman* opinions provides guidance as to how this challenge should be analyzed.

In *Norman I*, we found that SORA registration implicates a liberty interest of the defendant and therefore certain procedural safeguards are required before registration can be ordered pursuant to § 29-4003(1)(b)(i)(B). In particular, we

held that before a defendant can be ordered to register pursuant to § 29-4003(1)(b)(i)(B), the trial court must give the defendant notice that SORA registration is being considered and that a hearing will be held; that the trial court must then hold a hearing at which the defendant has the opportunity to dispute evidence in the record regarding sexual penetration or sexual contact; and that the trial court must finally determine whether the defendant subjected the victim to sexual penetration or sexual contact based on evidence adduced at the hearing, as well as the factual basis and the PSR.

Here, Strawn acknowledges that the county court provided him with notice that SORA registration was a possibility. He also concedes that a hearing was provided at sentencing regarding SORA registration. He argues, however, that the county court erred by determining that he was required to register under SORA before considering sentencing arguments made by his counsel later in the sentencing hearing.

We can discern no violation of Strawn's right to procedural due process. As Strawn concedes, the county court provided him with notice that SORA registration was under consideration and that the issue would be resolved at the sentencing hearing. Prior to that hearing, the county court received a brief and a sentencing memorandum addressing SORA registration that were submitted by Strawn's counsel. Then, at the sentencing hearing, Strawn's counsel repeated arguments against SORA registration that were made in the brief and sentencing memorandum. And while Strawn's counsel made additional arguments regarding sentencing later in the hearing, the county court did nothing to prevent counsel from making arguments relevant to SORA registration while the registration issue was under consideration. The county court afforded Strawn procedural due process.

*Firearms Advisement.*

Strawn's final assignment of error requires little discussion. As mentioned above, Strawn argues that the county court erred by "subjecting" him to a federal firearms prohibition.

The county court did no such thing. The county court advised Strawn that as a result of his convictions, "it may be unlawful" for him to purchase or possess firearms under federal law and suggested that if he had questions about that issue, he should consult with an attorney. Even if, as Strawn contends on appeal, his convictions do not qualify as a "misdemeanor crime of domestic violence," for purposes of the federal firearms restriction set forth in 18 U.S.C. § 922(g)(9), the district court's advisement imposed no firearms prohibition.

## CONCLUSION

Because Strawn's assignments of error are without merit, we affirm.

Affirmed.